(96 N. W. Rep. 298.)

---

C. E. FISHER *vs.* N. N. BETTS AND O. P. SMITH.

Opinion filed July 3, 1903.

### Taxation—Construction of Statute.

1. In 1890 a revenue law was passed by the Legislature providing for the sale of land for the nonpayment of taxes, and providing for issuing certificates of sale, and the effect of such certificates as evidence. It further provided that the purchaser would be entitled to a deed in a prescribed time  There was a failure to designate the officer who should issue such deed, or what the recitals or effect of the deed should be. In 1891 the Legislature provided for the issuance of deeds under sales made under the 1890 law, and prescribed what the recitals of the deed should be, and defined the effect of such recitals, and provided that the deeds should be prima facie evidence of the regularity of prior proceedings. *Held,* that the two laws should be construed together, the same as though passed at the same time.

### Tax Sales—Contract With Purchaser.

2. A sale made under the 1890 law for a tax levied in 1889 constituted a contract between the state and the purchaser, the terms of which are embraced in the law in force when the sale was made.

### Statute Part of Contract—Effect of Repeal.

3. No subsequent legislation could repeal the law in force when the sale was made, so as to change the effect of the deed as evidence in matters of substance, as that would be imparing the validity of a contract.

**Under Law of 1891, Auditor Executes Tax Deeds, Notwithstanding Repeal.**

4. Under the 1891 law the county auditor was the officer to issue deeds under tax sales made thereunder. In 1895 that provision of law was repealed, and it was therein enacted that deeds should be issued by county treasurers. The 1895 law was general in its terms, and made no reference to past sales. *Held,* for reasons given in the opinion, that the law was prospective only, and did not repeal the prior provisions of the law that auditors should issue deeds, and that a deed issued by an auditor on past sales after the 1895 law was in force was not void on its face.

**Where Law Requires Levy by Specific Amount, Levy By Percentage Not Fatal to Tax Deed.**

5. The fact that the state board of equalization in 1891 and 1892 levied taxes by percentage, when the law required a levy in specific amounts, does not render such taxes so levied invalid, and is not fatal to a tax deed issued on a sale for delinquent taxes based on such levy.

**Recitals of Tax Deed—Evidence of Notice of Redemption.**

6. The fact that a tax deed was not supported by evidence showing that notice of the time when the redemption period would expire had been published before the deed was issued is not ground for attacking a tax deed, as the auditor is presumed to have performed that duty, and the recitals of the deed are *prima facie* evidence that such notice was published.

**Same.**

7. Under a statute making a tax deed, when issued, *prima facie* evidence of the regularity of all prior tax proceedings, the deed is *prima facie* evidence that notice of the expiration of the time for redemption was published.

**Absence of Official Papers and Record Entries—Proof.**

8. A witness not connected with a county office, and not in charge of the records thereof as a public official, clerk or employe, is not a competent witness to testify to the absence from such office of certain papers; nor is he a competent witness to testify as to the absence from the records of such office of certain material entries.

**Testimony of Custodian of Public Record, Best Evidence.**

9. The best evidence in such cases is that of an official in charge of its files and records.

**Official Records and Files Must be Produced by Custodian.**

10. Ordinarily the records and files pertaining to the matter under investigation should be produced in court by the official in charge of them.

**Officer's Certificate.**

11. A certificate of an officer to the correctness of copies is not evidence of any other fact recited therein.

**Same.**

12. An officer certifying that a certain motion or other matter is all that the records of his office show that "pertains" to a levy is not evidence that the records do not show other matters pertaining to the levy.

**Performance of Official Duty—Presumption.**

13. In this state the statute provides that public officials are presumed to have regularly performed their duties, until the contrary is shown.

**Validity of Tax Deeds Offered—Evidence.**

14. Evidence considered, and *held* not to show that certain deeds offered in evidence as a source of title are invalid upon either of the several grounds of objection urged thereto.

**Evidence Outside of Statement of Case Not Considered.**

15. Matters shown by affidavit or other evidence not in the statement of the case as settled will not be considered in determining what disposition shall be made of a case on appeal.

Appeal from District Court, Cass county; *Charles A. Pollock,* J. Action by C. E. Fisher against N. N. Betts and O. P. Smith. Judgment for defendants, and plaintiff appeals.

Affirmed.

*J. E. Robinson,* for appellant.

Tax deeds are not *prima facie* evidence of title, and defendant offered no other evidence. There was no evidence to show levy of tax, notice of sale, or of expiration of period of redemption. There is no statute making tax deeds evidence of title, or regularity proceedings. There was no statute prescribing form of tax deed, or making it evidence, for tax sales of 1890. Whatever effect section 7, chapter 100, Laws of 1891, had, was destroyed by its repeal by Rev. Codes of 1896. Without impairing the obligation of contract, laws changing rules of evidence may be modified as the legislature sees fit. Cooley on Cons. Lim. 347, 349, 450, 451; *Hickox* v. *Tillman,* 38 Barb. 608; *Howard* v. *Moot,* 64 N. Y. 262; *Strode* v. *Washer,* (Or.) 16 Pac. 926; *Karnley* v. *Paisley,* 13 Iowa 89; *Kendall* v. *Kingston,* 5 Mass. 524; *Ogden* v. *Saunders,* 12 Wheat. 213,

349, 6 L. Ed. 606; *Fales* v. *Wadsworth,* 23 Me. 553; *Commonwealth* v. *Williams,* 6 Gray 1; *Pratt* v. *Jones,* 25 Vt. 303. After the repeal of statute making tax deed evidence of title, introduction of deed, without proof of preliminary steps, vesting the power of sale, does not show *prima facie* title. *Emerick et al.* v. *Alvarado et al.,* 27 Pac. 357; *Hickox* v. *Tillman,* 38 Barb. 608. Purchaser at tax sale at common law must prove taxes were duly assessed, the successive steps leading to a lawful sale, at which he, or some one under whom he claims, became the purchaser. Cooley on Taxation (2d Ed.) 473 and cases cited. A statute declaring a tax deed evidence of regularity of all proceedings leading up to it, does not render it evidence of compliance with an act requiring a redemption notice. *Herrick* v. *Niesz et ux.* 47 Pac. 414; *Miller* v. *Miller,* 31 Pac. Rep. 247, 98 Cal. 376; *Reed* v. *Lyon,* 31 Pac. 619, 96 Cal. 501; *Halbrook* v. *Fellows,* 38 Ill. 440; *Wilson* v. *McKenna,* 52 Ill. 43; *William* v. *Underhill,* 58 Ill. 137; *Jewell* v. *Truhn,* 38 Minn. 433, 38 N. W. Rep. 106; *Muller* v. *Jackson,* 39 Minn. 431, 40 N. W. Rep. 565. That county commissioners held a session of the board of equalization in July, 1889, was essential to the validity of a tax. Comp. Laws 1584; *Powers* v. *Larabee,* 2 N. D. 141, 49 N. W. Rep. 724. The tax sale for the year 1889 was void, because county commissioners failed to attach their warrant to tax list, requiring treasurer to collect. Cooley on Taxation, 424, 481. Blackwell on Tax Titles, chapter 7.

The testimony of Mr. Robinson to the effect that he had examined tax list of 1889, Cass county, and that no warrant under the hand and seal of county commissioners was attached, was competent. Greenleaf on Evidence, section 93. A public document may be proven by a witness who has taken a copy of it. Thayer on Evidence, 490. The law does not require plenary evidence to prove a negative fact. 2 Blackwell, 846.

There was no legal designation of a newspaper for the publication of the delinquent tax list of 1889, 1891, and 1892, Laws of 1890, 68; *Cass County* v. *Certain Lands of Security Improvement Co.,* 7 N. D. 528, 75 N. W. Rep. 774. Sales and deeds for 1891 and 1892 are void, as state taxes were levied by percentages and not in specific amounts. *Wells County* v. *McHenry et al.,* 7 N. D. 246, 261, 74 N. W. Rep. 241; *Dever* v. *Cornwell,* 10 N. D. 123, 86 N. W. Rep. 229; A sale which is void by reason of a failure to levy a tax, cannot be validated by subsequent legislation. *Dever* v. *Cornwell, supra; Wells County* v. *McHenry, supra.* A statute of limitation does not cure

defects in assessor's affidavit. *Lee* v. *Crawford,* 10 N. D. 482, 88 N.
W. Rep. 97 ; Cooley on Taxation, 555 (2d Ed.) Cooley's Con. Lim.
447, 449 ; *Groesbeck* v. *Seeley,* 13 Mich. 329, 342 ; *Baker* v. *Kelly,*
11 Minn. 480, 593, 499 ; *Conway* v. *Cable,* 37 Ill. 82 ; *Waln* v. *Shearman,* 8 Sar. & Raw. (Pa.) 357 ; *Kipp* v. *Johnson,* 31 Minn. 360 ; *Farrar* v. *Clark,* 85 Ind. 449 ; *Gabe* v. *Root,* 98 Ind. 256 ; *Case* v. *Dean,* 16
Mich. 12 ; *Quinlan* v. *Rogers,* 12 Mich. 168. A tax sale is void when
made for any sum in excess of legal taxes and charges. *Baker* v.
*Supervisors of Columbia County,* 39 Wis. 444 ; *Milledge* v. *Coleman,* 47 Wis. 184, 2 N. W. Rep. 77 ; *Kimball* v. *Ballard,* 19 Wis. 601 ;
*Barden* v. *Supervisors of Columbia County,* 33 Wis. 445 ; *Harper*
v. *Rowe,* 53 Cal. 233 ; *Treadwell* v. *Patterson,* 51 Cal. 637 ; *Case* v.
*Dean,* 16 Mich. 12, 32, 33 ; *Riverside* v. *Howell,* 113 Ill. 259 ; *Gage*
v. *Plumpelly et al.,* 115 U. S. 454, 463, 29 L. Ed. 449 ; Cooley on
Taxation (2d Ed.) 497. In each year the city levies were void, not
being based on an estimate of expenses, or on a valid appropriation
ordinance. *Shattuck et al.* v. *Smith,* 6 N. D. 56, 69 N. W. Rep. 5.
As defendant had no lien, he acquired no right by the payment of
subsequent taxes. *McHenry* v. *Brett,* 9 N. D. 68, 81 N. W. Rep. 65.

*Morrill & Engerud,* for the respondent.

A tax sale creates a contract between the state and the purchaser
at such sale, and its terms are found in the statute governing the
sale. *Roberts* v. *First National Bank of Fargo,* 8 N. D. 504, 79 N.
W. Rep. 1048. Hence it follows, that a purchaser at 1890 sale was,
by statute under which he bought, entitled to a deed, and a legal
obligation rested upon the state to provide for its execution and
form. This obligation the state fulfilled by the enactment of chapter
100, Laws of 1891. Section 7 of such act provides such a deed, and
its legal effect, which became, by relation, a part of its original contract of sale as to purchasers in 1890, and was a part of the contract
under which they bought at sales of 1891 to 1895 inclusive. Such
deed evidenced the contract between the state and the tax purchaser
and was guaranteed by the state to evidence, *prima facie,* the regularity of all proceedings requisite to its issuance. Such contract the
legislature had no right or power to impair. Constitution of the U.
S., article 1, section 10. Constitution of North Dakota, article 1, section 16 ; *Roberts* v. *First National Bank of Fargo et al. supra; Smith*
v. *Cleveland,* 17 Wis. 556 ; *Marx* v. *Hawthorne,* 30 Fed. 579 ; *Tracy*
v. *Reed,* 38 Fed. 59 ; *Hart* v. *Ross,* 64 Ala. 96. *Contra, Hickox* v.

*Tillman,* 38 Barb. 608; *Strode* v. *Washer,* 16 Pac. 926. The latter overruled in *Tracy* v. *Reed,* 38 Fed. *supra.*

The legislature could not deprive the tax purchaser of his deed by repealing the law, without substituting some provision for a deed to him. The revisers of the code intended to repeal the old revenue law only as to sales made after its adoption. The same rule of construction applies as in construing the repealing clause of the Rev. Codes relating to assessors. *State ex rel. Scovill* v. *Morehouse,* 5 N. D. 406, 67 N. W. Rep. 140. The tax deeds were, therefore, competent evidence of the regularity of all proceedings up to their execution, because all issued under section 7, chapter 100, Laws of 1891, which was never repealed so far as it relates to sales made prior to 1896.

Under the revenue law of 1890 and 1897, the county auditor gives the notice of the expiration of redemption. This act of giving such notice is, therefore, official; and the giving thereof a step in the proceedings preceding the execution of the deed, of which act the deed is evidence. *Garmoe* v. *Sturgeon,* 21 N. W. Rep. 493; *Reed* v. *Thompson,* 9 N. W. Rep. 331; *Wilson* v. *Crafts,* 9 N. W. Rep. 333; *Fuller* v. *Armstrong et al.,* 6 N. W. Rep. 61; *Young* v. *Goodhue,* 76 N. W. Rep. 822.

Appellant introduced a certified copy of the tax levies for the city of Fargo, and proceedings of the city council relating thereto. These are immaterial, in that they do not relate to taxes upon which respondent's tax deeds are based. Such proof is also incompetent. The auditor's certificates fail to show that the transcript is a true and *complete* transcript of *all* the minutes under any given date, or on any given page. The auditor certifies that, what he has seen fit to transcribe, is a true and correct transcript from the records. The auditor cannot substitute his judgment for that of the court, as to what is pertinent to any given subject. *Wood* v. *Knapp,* 2 N. E. Rep. 632. Mr. Robinson undertook to prove, by his own testimony, what the record of the county auditor's office failed to show. He was not the custodian of the records. It is not claimed that it was necessary to offer the records. But if an examination is to be made, and the result stated, it must be under proper instructions. The rule is well established. *State* v. *Cadwell,* 44 N. W. Rep. 700. Whatever force there may be in the several objections to the validity of the tax sales in dispute, they are barred by the statute of limitation. Section 1269, Rev. Codes of 1895, barred any action to attack a tax deed

three years from its record, and applies to both past and future deeds. That law was repealed by chapter 126, Laws of 1897, which substituted section 79 of that chapter for it, and thereby the limitation. as to past deeds was fixed at three years after the passage and approval of the act, towit: March 7, 1897. The bar of the statute was. complete March 8, 1900. Such acts are constitutional. *Meldahl* v. *Dobbin et al.,* 8 N. D. 115, 77 N. W. Rep. 280; *Roberts* v. *First Nat'l Bank of Fargo et al.,* 8 N. D. 504, 79 N. W. Rep. 1049; Black on Tax Titles, section 492. They take effect on existing causes of action. Black on Tax Titles, section 500; *Merchants' Nat'l Bank of Bismarck* v. *Braithwaite,* 7 N. D. 358, 75 N. W. Rep. 244; *Osborne* v. *Lindstrom,* 9 N. D. 1, 81 N. W. Rep. 72. Short periods of limitation are very common relating to judicial sales by administrators. and guardians. In such cases it is uniformly held, that such limitations cure all irregularities except as to jurisdiction to act generally. 11 Am. & Eng. Enc. of Law (2d Ed.) 1130; *Streeter* v. *Wilkinson,* 24 Minn. 288; *Rice* v. *Dickerman* (Minn.) 50 N. W. Rep. 698. Statutes of limitation as to tax sales are of the same nature and receive a similar construction. No objection will avail against the bar of such statute, unless it shows, either that the land was not taxable, or that the persons acting had no power, or that the tax was. paid before sale. There must be a valuation of the land, a levy and a sale for unpaid taxes. These different acts may be irregularly performed, but the irregularity is of no avail after the statute has run. *Ruggles* v. *Fond du Lac Co. et al.,* 23 N. W. Rep. 417; *Milledge* v. *Coleman,* 2 N. W. Rep. 321; *Wis. Cent. Ry. Co.* v. *Lincoln Co. et al.,* 30 N. W. Rep. 619; *Oconto Co.* v. *Jerrauld et al.,* 50 N. W. Rep. 591; *Dupen et al.* v. *Wetherby,* 48 N. W. Rep. 378; *Ensign et al.* v. *Barse et al.,* 107 N. Y. 329, 15 N. E. 401; *Bower* v. *O'Donnell,* 12 N. W. Rep. 352; *Jordan* v. *Kyle,* 27 Kan. 190; *Maxon* v. *Huston,* 22 Kan. 643; *Doudna* v. *Harlan,* 45 Kan. 484, 25 Pac. Rep. 883; *Slocum* v. *Slocum,* 30 N. W. Rep. 562; *Bullis* v. *Marsh,* 2 N. W. Rep. 578; *Shawlu* v. *Johnson,* 3 N. W. Rep. 604; *Thomas* v. *Stickle,* 32 Iowa, 71; *Douglas* v. *Tulock,* 34 Iowa 262. The statutes involved. in the foregoing decisions are all similar to that of North Dakota. See also, *Sweigle* v. *Gates,* 9 N. D. 538, 84 N. W. Rep. 480; *Roberts* v. *Bank, supra; Meldahl* v. *Dobbin, supra.*

MORGAN, J.    In this action it is sought to determine adverse claims to lots 17 and 18 of block A1, Northern Pacific addition to the city of Fargo. The plaintiff alleges ownership of said lots, and

alleges that the defendants claim a certain estate and interest therein adverse to that of the plaintiff, by virtue of certain alleged assessments of taxes thereon, which said taxes, and the tax sales thereunder, as well as all certificates and deeds based thereon, are void. The plaintiff prays that the defendants set forth such adverse claims, and that they be adjudged void and of no effect. The defendant Betts answered, and alleged the following facts: That said lot 17 was in 1889 subject to taxation in the city of Fargo, and was in that year regularly assessed for taxation, and that the taxes were regularly and lawfully levied thereon; that, upon said taxes remaining unpaid and becoming delinquent, the said lot was duly and regularly sold by the auditor of Cass county, after all the preliminary steps to said sale had been duly complied with, to the defendant O. P. Smith; and that a certificate of such sale was duly issued by said auditor to said Smith on said day. Further answering, the defendant alleges that said lot was assessed regularly and lawfully in 1892, and, the taxes thus assessed becoming delinquent, the said lot was regularly sold by the auditor to said Smith on December 5, 1893, and a certificate of such sale issued to said Smith on that day; that the defendant Betts paid all the taxes levied on said lot during the years 1890 and 1891 and during the years from 1893 to 1899, inclusive; that on the 4th day of April, 1894, a deed to said lot was regularly issued to said Smith by said auditor, based upon the certificate of sale of the same issued on December 2, 1890, which vested in said Smith the absolute fee simple title to said lot; that more than three years had elapsed since said deed was recorded before this action was commenced, in consequence of which this action is barred. The answer also sets forth similar allegations in regard to lot 18 of said block, and alleges that said defendant Smith secured an absolute title to said lot by virtue of a tax deed issued to him by the auditor of said county, based upon a certificate of sale of said lot dated December 6, 1892, upon a sale made upon the delinquent taxes for the year 1891; that said deed was dated January 15, 1896, and filed for record on the 10th of August, 1896; that said Smith conveyed both of said lots to defendant Betts on the 28th day of February, 1399; and that he is now the owner thereof in fee simple. The answer contains allegations of ownership based on other tax deeds, but no claims are made thereto under the evidence by virtue of said deeds; hence no mention will be made of them. After making findings of fact in favor of the defendants, the district judge

entered judgment on said findings in favor of the defendants.. From such judgment the plaintiff has appealed to this court,. and requests a review of all the issues in this court.

In the year 1890, when lot 17 was first sold for the delinquent taxes thereon for the year 1889, section 72, c. 132, p. 404, of the revenue law of 1890, was in force, and provided as follows: "Such. certificate shall in all cases be *prima facie* evidence that all the requirements of the law with respect to the sale have been duly complied with, and that the grantee named therein is entitled to a deed. therefor after the time of redemption has expired." It will be seen. that neither this section nor the revenue law of 1890 made any provision as to the issuing of deeds upon sales made pursuant thereto. In. March, 1891, the legislature, recognizing the omission by the legislature of 1890 to make any provision for issuing deeds under tax. sales made thereunder, enacted section 110, c. 100, p. 271, of the Laws of 1891, which is as follows: "Section 7. That the following section be added to said chapter 132, to be known as section 110 :. 'Section 110. At the expiration of the time for redemption of lands. sold for delinquent taxes, as provided in section 103 of chapter 132 of Laws of 1890, the county auditor of the county in which the sale of lands took place shall execute to the purchaser, his heirs or assigns, in the name of the state, a deed of the land remaining unredeemed, which shall vest in the grantee an absolute estate in fee simple in such land, subject, however, to all the claims which the. state may have thereon for taxes or other liens or incumbrances. Such deeds shall be issued by the county auditor under the seal of the county, and shall be conclusive evidence of the truth of all the facts therein recited, and *prima facie* evidence of the regularity of all the proceedings, from the valuation of the land by the assessor up to the execution of the deed. Such deed shall be substantially in the following form :'" (Here follows the form of deed.) This. section supplemented the law of 1890, so far as the form and effect of deeds to be issued on sales under the law of 1890 were concerned,. and fulfilled the obligation contained in the law of 1890 that purchasers were entitled to a deed. Before the law of 1890 was repealed. a deed had been issued for lot 17, sold in 1890.

In 1895, when the Rev. Code was enacted, section 72, c. 132, p. 404, of the Laws of 1890, and section 7, c. 100, p. 271, of the Laws. of 1891, were expressly repealed, and another revenue law was.

enacted. This new law provided, among other things, that the treasurer of the county should issue tax deeds, and not the auditor, as provided by the Laws of 1891, set forth above. Said sections of the law of 1895 are as follows:

"Section 1267. If no person shall redeem such lands within two years, at any time after the expiration thereof and on production of the certificate of purchase, the treasurer of the county in which the sale of such lands took place, shall execute to the purchaser, his heirs or assigns, in the name of the state, a deed of the land remaining unredeemed, which shall vest in the grantee an absolute estate in fee simple in such land, subject, however, to all the claims which the state may have thereon for taxes, or other liens or incumbrances.

"Section 1268. Such deeds shall be executed by the county treasurer under his hand and the execution thereof shall be attested by the county auditor with the county seal and such deed shall be conclusive evidence of the truth of all the facts therein recited and of the regularity of all of the proceedings, from the assessment and valuation of the land by the assessor up to the execution of the deed, and such deed shall be substantially in the following form, or other equivalent form:" (Here follows form of deed.) Both of the sections quoted were expressly repealed in 1897.

The questions presented for determination may be summarized as follows: (1) The effect upon the sales of 1891 and 1892 of the repeal in 1895 of section 72, c. 132, p. 404, of the revenue law of 1890, and the repeal of section 7, c. 100, p. 271 (being added as section 110 to the revenue law of 1890), of the revenue law of 1891; (2) the effect upon the sale of lot 17 in 1890 of the fact that no provision was made in the law of 1890 as to what officer should issue tax deeds upon sales made pursuant thereto; (3) the effect of the 1896 deed of lot 18 having been issued by the auditor, when that law provided for the issuance of deeds by the county treasurer; (4) whether said section 7, c. 100, p. 271, Laws 1891, added to the Laws of 1890 as section 110, and making tax deeds *prima facie* evidence of the regularity of all the proceedings from the valuation of the land by the assessor up to the execution of the deed, could be repealed by the legislature, so as to deprive grantees under the law of 1891 of the benefit of that law defining what effect such deeds were entitled to; (5) whether it is shown by the plaintiff that the deeds issued under the 1890 and 1891 laws are invalid by reason of

failure to comply with the provisions of the law in respect to the levy of taxes, or for any other reasons.

The appellant claims that inasmuch as the laws of 1890 and 1891, under which the deed to lot 17 was issued, were repealed in 1895, the deed has no force as evidence that the tax proceedings were regular, and that the regularity of all acts of all of the taxing officers must be affirmatively established before the deed can be sustained, or can cut off plaintiff's right to the land. He claims that such repeal related solely to the remedy, and that the legislature has a right to change existing remedies, as such change involves a change of the rules of evidence only. Such contention would not be disputed if the change referred to the remedy only, but if the change of remedy or change in the rules of evidence goes further in its results, and affects contract rights, such changes are inhibited. The legislature will not be permitted, under the guise of changing a remedy or a rule of evidence, to impair a vested right under an existing contract; and the presumption that all requirements of law with respect to the sale had been complied with, raised by the delivery of the tax certificate, was raised in favor of the tax purchaser by the law in force at the time of his purchase. This presumption was perpetuated by the deed, was a vested matter of right, and could not be taken away by a repeal of these laws. Cooley on Const. Lim. 347. Speaking of section 1639 of the Compiled Laws of 1887, which was practically the same as the section under consideration, this court said in *Roberts* v. *Bank,* 8 N. D. 504, 79 N. W. Rep. 1049: "This statute entered into the contract of purchase, and became a part thereof." In *Smith* v. *Cleveland,* 17 Wis. 573, that court said: "This was a most material and important advantage to the purchaser, and could not have escaped his attention. It concerned the life and validity of the contract. Could the legislature afterwards step in and take it away, and thus remove the foundation of his right? Can the legislature say, as to contracts past and executed, that they shall mean one thing today and another tomorrow? That they shall have one construction at time of execution, and another afterwards? That the title of the purchaser by deed first indefeasible shall afterwards be defeasible? If these things can be done, then certainly the protection afforded by the constitution to private rights is very slight and inadequate. But, as has already been decided, the legislature is deprived of this power." The following cases are also authority for the same principle: *Morgan* v. *Commissioners,* 27 Kan.

89; *Forqueran* v. *Donnally,* 7 W. Va. 114; *Merrill* v. *Dearing,* 32 Minn. 479, 21 N. W. Rep. 721; *Hart* v. *Ross,* 64 Ala. 96; Cooley on Taxation, p. 545.

The deed to lot 17 was actually delivered before the law under which it was issued was repealed. Hence no question can arise upon the validity of the deed to lot 17, so far as this point is concerned. The deed to lot 18 was not delivered until after the law under which it was issued was repealed. The Revised Codes of 1895 provided for issuing tax deeds by county treasurers only. The law under which these sales were made provided for issuing tax deeds by auditors only. The deed to lot 18 was issued by the county auditor after the 1895 Code took effect. It is claimed that the issuing of the deed by the auditor, and not by the treasurer, made the deed void on its face. This would be true if the auditor had no right to issue it. The revenue law of 1895 is entirely prospective. It relates solely to proceedings had under it. It makes no reference to past sales, or to deeds upon past sales. The form of deed prescribed in that law relates only to sales made thereunder, and is not adapted to the provisions of the 1891 law. The purchaser at the 1890 and 1891 sales was entitled to a deed from the state. The state had obligated itself to give him one. It could not deprive him of the right to one. It could not repeal the law under which he became entitled to a deed, without making provision in the new law for a deed the equivalent in substantial matters to that to which he was entitled under the law when the sales were made. The treasurer not having any right to issue the deed under past sales, under the laws of 1895, it must be held that any attempted repeal of the laws of 1891 was inoperative, so far as sales that had occurred under the 1891 law were concerned. The repeal was operative only so far as the future was concerned. The deed having been issued by the auditor, and the law authorizing him to do so not having been repealed, so far as this case is concerned, the deed is not void on its face. It needs no mention that the purchaser has no vested right to a deed by a particular officer. It is his right to a deed which was impaired, if the enactment of this law of 1895 be held valid as a repeal of the 1891 law. See also, *Pounds* v. *Rogers,* 52 Kan. 558, 35 Pac. 223, 39 Am. St. Rep. 360; *Adams* v. *Beale,* 19 Iowa 61; *Garrett* v. *Wiggins* (Ill.) 30 Am. Dec. 653; *McCann* v. *Merriam,* 11 Neb. 241, 9 N. W. Rep. 96, holding that the law in force at the time of the sale governs as to the terms of the contract of sale.

The authority of the auditor to issue the deed was not taken away from him, and such deed is not, therefore, void on its face.

It is next urged that neither of the deeds is admissible in evidence in the absence of an affirmative showing that a notice as to when the time for redemption would expire had been given by the publication of a notice to the person against whom the land was assessed prior to the issuing of the deed, as provided by section 103, c. 132, p. 414, of the revenue law of 1890. This section provides that the time for redemption shall not expire until sixty days after the service of such notice. It is therefore claimed that the deeds were issued before the time for redemption had expired, and are therefore void. Sec. 7, c. 100, p. 271, of the Laws of 1891, provides that deeds issued thereunder shall be *prima facie* evidence of the regularity of all the proceedings from the valuation of the land by the assessor up to the execution of the deed. These deeds recite that the time for redemption from the sale under which they were made had expired, but do not recite the fact of the service of such notice. The deeds are in the precise form prescribed by the Laws of 1891. The contention of the plaintiff is that a showing of compliance with the provisions as to the publication of this notice was an indispensable prerequisite to the production of the deeds in evidence. The defendants contend that the deed, of its own force, shows a compliance with the law requiring notice, by virtue of section 7, c. 100, p. 271, of the Laws of 1891, enacted as section 110 of the Laws of 1890, making the deed *prima facie* evidence of the regularity of all the proceedings prior thereto. Neither party has offered any proof to the effect that such notice was published or was not published. The question must therefore be determined on the deed and the statute quoted, prescribing what the deed shall be evidence of. Without the publication of such notice the time for redemption would not expire. Its service would cut off redemption after the deed issued. The notice is a requisite step between the sale and the deed. It does not go to the groundwork of the tax, but is a necessary condition precedent to the issuance of the deed. The legislature required this notice to be published by the auditor before issuing the deed. Without any proof on the subject, we deem it the better rule to hold that the officer performed his duty and gave the notice. In this state there is a presumption that officers regularly perform their duty, in the absence of any showing to the contrary. Subdivision 15, section 5713a, Rev. Codes 1899. The recital of the

deed that the time for redemption had expired is also at least *prima facie* evidence that the notice was published as required by the statute before the deed was issued. Section 7, c. 100, p. 271, Laws 1891. It is not necessary in this case that the defendants should have made any other than a *prima facie* showing on this question, as such *prima facie* showing was not attempted to be rebutted. In *Sounkup* v. *Union Investment Company*, 84 Iowa 448, 51 N. W. Rep. 167, 35 Am. St. Rep. 317, the court said: "The deed being *prima facie* evidence of the regularity of all proceedings prior to its execution, it must be presumed, in the absence of a showing to the contrary, that the notice was served upon the person in whose name the land was taxed. There being no showing to rebut this presumption, we must hold that the notice was properly served on John M. Curless." The following cases tend to sustain defendants' contention that the deed is *prima facie* evidence of the service of notice of expiration of the time of redemption: *Young* v. *Goodhue* (Iowa) 76 N. W. Rep. 822; *Wilson* v. *Crafts* (Iowa) 9 N. W. Rep. 333. In *Washington* v. *Hosp.*, 43 Kan. 324, 23 Pac. 564, 19 Am. St. Rep. 141, the court said: "More than that, the presumption of law, in the absence of testimony, is that the officer does his duty; and in this case we must assume, from the state of the record, that the county treasurer did that which was required of him. There was no proof offered to overthrow the *prima facie* case established by the defendant in error." We have examined the cases cited by the attorney for the appellant, from the Supreme Courts of the states of California and Illinois. From our understanding of such cases we do not consider them in point, as they are based upon statutes entirely different from the statutes of our state. In those states the notice to be given of the expiration of the time for redemption must be given by the purchaser at the tax sale, and not by the auditor. Hence no presumption arises that an official performed his duty, when that duty was to be performed by the purchaser.

It is next contended that the sale was void for the reason that the tax list had no warrant attached to it, authorizing and directing the treasurer to collect the taxes levied as required by the provisions of section 1596 of the Compiled Laws of 1887, and that the sale was void for the further reason that the tax list "contains no certificate * * * showing that it is a tax list, or that the taxes are correctly charged, * * * and that no such certificate or warrant is anywhere annexed or attached to this tax list for the year

1889." In support of this contention the attorney for the appellant testified at the trial as follows: "I have also examined the tax list of Cass county for the year 1889, on which is listed the property in question, and I find that the tax list for that year is not in any manner authenticated. It contains no warrant under the hand or under the seal of the county commissioners directing the treasurer or auditor or any person to collect the taxes for the year 1889, and it contains no certificate by the county auditor, under the seal of the county, showing that it is a tax list, or that the taxes are correctly charged against the property described in the tax list; and no such certificate or warrant is anywhere annexed or attached to this tax list for the year 1889. It is in no manner authenticated as a tax list." The tax list was not produced in court; nor was the county auditor, the legal custodian of the tax list, nor the county treasurer, the legal custodian of the duplicate tax list after the warrant has been attached to it, called as a witness. The testimony of the attorney is that he simply examined the tax list. It cannot be gathered from his testimony whether he failed to find any warrant at all, or whether there was no warrant sufficient in law as such. From such evidence the court cannot base a finding that there was no warrant at all. It is too indefinite, and seems more like the conclusion of the witness that the papers found did not sufficiently show, as a matter of law, that the tax list was properly certified, or that the warrant attached was sufficient as a matter of law. This testimony does not negative the fact that no warrant or no certificate at all is attached to the tax list. His testimony does no show whether there is an entire absence of a warrant, or whether the warrant is defective, in his opinion, as not complying with the statute. If the warrant or the certificate was there in some form, the court should pass upon its sufficiency, and not the attorney. However, giving the testimony the fullest scope possible—that it negatives the existence of the warrant—the testimony is not the best evidence, and no effect can be given to it in this case. The custodian of the tax list may have known of the existence of the warrant and of the certificate. It is not enough to show that the witness found none by his search. The custodian of these records should have been called, before their existence can properly be negatived. A question similar to the one here involved has been decided at this term in *Sykes* v. *Beck*, 96 N. W. Rep. 844, and the incompetency of such evidence clearly shown on principle, and also as based on a careful review

of the authorities. What is there said is decisive of this case adversely to the contention of the appellant. The attorney for the respondents made seasonable objections to the testimony of the appellant's counsel given on this matter, and as to other matters concerning which he testified. These objections are urged in this court, and are here and were in the court below specifically stated, viz., "as merely a conclusion, incompetent, irrelevant, immaterial, and not the best evidence, and hearsay."

It is next contended that the county commissioners failed to designate a newspaper in which to publish the delinquent tax lists for the years during which these taxes were levied. The contention is that, if there was any designation at all, it was the Fargo Republican that was designated, and that such designation was not a designation at all, as there was no newspaper in the city of Fargo at that time of that name; that there was a daily newspaper then published there as the Fargo Daily Republican, and a weekly newspaper as the Fargo Weekly Republican. It is shown in this case by the recitals of the deed that there was a publication of the delinquent tax lists for those years. The objection goes simply to the failure to designate by the county commissioners. The proof in support of this objection is the following extract from the proceedings of the county commissioners, in connection with the following certificate of the county auditor and the oral testimony of Mr Robinson, namely: "Upon motion the contract for publishing the delinquent tax list was awarded to the Fargo Republican at four cents per description, and a bond of four hundred dollars to be furnished for the faithful performance of the contract." The certificate of the auditor attached thereto is as follows: "I * * * do hereby certify that the above is a true and correct transcript from the records of the county commissioners, so far as the same pertains to the resolutions designating a newspaper for the publication of the delinquent tax lists, * * * as the same remains of record in my office." The certificate is not in such form as to negative the existence of other matters in the proceedings of the board that pertain to the designation of a newspaper for the purpose named. What pertains to a designation of a newspaper in which to publish a delinquent tax list is a question of law, depending for its answer upon the facts proven. It is the auditor's conclusion that the above motion contains all that pertains to that question. It is not for him to determine the question. He does not certify that the portion of the record to which he certifies

is a true and correct transcript of the whole motion, even. For these reasons, the copy is not comprehensive enough to negative the existence of other matters in the record. The certificate of the auditor should be confined to the correctness of copies. It is only by force of the statute that certified copies are permitted to be used, and when used they should be taken as evidence of such facts only as are authorized to be so certified. Mr. Robinson testified that he had examined the proceedings of the board of county commissioners for the years mentioned, and that the record "contains no resolution designating a newspaper for the publication of the tax lists for said years, excepting the three resolutions of which certified copies have been put in evidence." One of the exceptions is the certified copy referred to above. The records were not produced in court. The county clerk was not called as a witness. This mode of showing the absence of a part of public records has been heretofore condemned in this case, and nothing more need be said on the subject. If official acts are to be set aside, it should only be done on competent proof that such acts are not in accordance with prescribed modes. This oral testimony does not negative the fact that there was no designation of a newspaper other than by the so-called resolution testified to. The deed recites the publication of the list. The law does not declare how the newspaper shall be designated by the commissioners. It is not specified in the Code that it must be done by resolution, and that there is no designation by any other resolution than the one spoken of by the attorney is the only way that the fact that there was a designation is negatived. The records could not be of that voluminous character making their production in court burdensome, and, if shown so to be, no reason is apparent why the auditor could not have been produced to testify as to what they failed to show. As there is no showing that there was no designation of a newspaper as provided by law, the case of Cass County v. *Security Improvement Company,* 7 N. D. 528, 75 N. W. 775, is not in point. This objection is overruled, because the basis of it is not shown by the evidence to exist.

It is next shown that the records of the board of county commissioners do not show that the county commissioners held sessions as a board of equalization in the years 1889 to 1895, inclusive. It is not claimed that the county commissioners did not meet and act as a board of equalization during these years. The contention is that the minutes of the board of county commissioners do not show

a meeting of the board of equalization. It is conceded that the proceedings of the board of equalization were kept in a separate record, called "The Record of the Board of Equalization." In 1889 the membership of these two boards was identical. In 1891 it was not identical. The appellant relies on section 586 of the Compiled Laws of 1887 to sustain his contention on this point. Said section reads: "They shall keep a book in which the orders and decisions made by them shall be recorded, except those relating to roads and bridges." What would be the effect, had the county commissioners acting as a board of equalization, failed to keep a separate record of their proceedings, we need not determine. In this case they met as a board of equalization, and kept minutes of their proceedings in a separate book. There was an opportunity for objecting taxpayers to be heard. We deem that sufficient and a compliance with the statute. It is the fact that there was no meeting that makes a tax void, and not possible irregularities in the method of perpetuating the record of the board's proceedings. This objection therefore has no such force as to avoid the tax levied during that year.

It is next claimed that the levies for the city of Fargo in 1889, 1891, and 1892 are void, because not based on an estimate of expenses or on a valid appropriation ordinance. This contention is based on section 922 of the Compiled Laws of 1887, which is as follows: "The city council shall at the first regular meeting in September or within ten days thereafter levy a tax for general purposes sufficient to meet the expenses of the year, based upon estimates furnished by the city auditor or a committee of the city council." Counsel for appellant testified that he had examined the records of the city council, and that he found that "the records contain no estimate of expenses in connection with such tax levies, and no estimate of such expenses for any year from 1889 to 1895, inclusive, excepting such as is shown by the certified copies offered in evidence." In this case the records of the city council were not produced when the witness testified as to what they did not contain. Besides his own testimony, to substantiate this point the appellant's attorney introduced in evidence a certificate of the county auditor, certifying to the correctness of certain copies of the proceedings of the council. This certificate is to the effect that the foregoing copies are true and correct transcripts of the record "of the city council of the city of Fargo, of the appropriation ordinance, and

of the city tax levy for the year 1889, and of all that pertains to such · tax levy." This certificate does not wholly negative the fact that such estimate by the auditor or by a committee was not made. The estimate contemplated by the above section of the Compiled Laws is to be made by the auditor or by a committee for the enlightenment of the council as to the amount to be raised to meet the expenses for the coming fiscal year. It is not provided that such estimates shall be in writing, or entered in the minutes of the council, nor preserved in the auditor's office. It is not provided when such estimate must be submitted, nor must it be submitted at the same meeting. when the levy is made. The evidence, therefore, does not negative the fact that the council made the levy without basing it on any such estimate. This evidence pertains only to the records of the council. It does not pertain to the files of the auditor. The testimony of the attorney was incompetent, under the rule laid down in this case, but, granting its competency, it does not negative the fact that the levies were based on proper estimates. In short, there is a clear failure to show a noncompliance with this statutory provision. *Shattuck* v. *Smith,* 6 N. D. 56, 69 N. W. 5.

It is further claimed that the tax proceedings subsequent to the levy, and the levy, are all void, for the reason that the state board of equalization levied the state tax by percentages instead of by specific amounts. This objection applies to the sale of lot 18 only, as the state levy of 1889 was made in specific amounts. Section 6, c. 100, p. 270, of the Laws of 1891, under which the levy affecting lot 18 was made, provides as follows: "The state tax shall be levied by the state board of equalization at their meeting in August of each year and the rate of such tax shall be certified by the state auditor to each county auditor on or before the fifteenth day of September annually. * * * Such levy shall be made in a specific amount and the rate shall be determined by the state auditor." It is contended by the appellant that this provision of the law is mandatory, and imposes the duty upon the board to make the levy in specific amounts, and that the failure to do so renders the levy, and all subsequent proceedings based on the levy, void. The respondents contend that this provision is directory merely, and does not render the tax levy or subsequent proceedings void. It is a matter within legislative control to regulate the mode or method of making levies by boards or officers. The legislature may provide for a levy by mills, percentages, or in specific amounts. The levy

by percentages for the year 1890 was not, therefore, in strict accordance with the provisions of the statute. The effect of a levy by percentages when the law prescribed that levies should be made in specific amounts, is the question presented by this objection to the deed. That a levy made by the county commissioners by percentages renders the tax void, as well as sales and deeds based on such levy, has been held by this court. *Wells County* v. *McHenry,* 7 N. D. 246, 74 N. W. 241; *Dever* v. *Cornwell,* 10 N. D. 123, 86 N. W. 227. It is there also held that a judgment for a tax cannot be entered on such levies. It is held to be no levy at all in the decisions cited. A levy by county commissioners by percentages, and a levy by the state board of equalization in the same way, differ in results, because not based on similar conditions. The total valuation of the property of the person taxed is not definitely known until the state board of equalization has acted. The valuation of his taxable property may be changed, either by being lowered or raised, or some of it lowered and some of it raised; and the property of different taxpayers may not be affected in the same way. The valuation basis on which the tax was to be raised was not definitely known when the levies were made by the county commissioners in July. A levy by percentages at that time might not have resulted in raising the amount necessary for current county expenses, in view of the possible changes made by the state board. No such consequences can follow a percentage levy by the state board of equalization. The amount to be raised is fixed and definite when the levy is made. The valuation of all the taxable property on which the tax is to be levied and the estimated expenses of the state are definitely known and fixed when the state board of equalization makes its annual levy. It then becomes a matter of computation to determine what the rate of taxation shall be. No detriment can follow if the amount to be raised is figured by percentages. The amount to be raised through taxation will be the same. For that reason, in case of a levy not in accordance with the statute, in which the same results are reached as if the statute had been followed, we fail to see that any injury follows to the taxpayer, and see no ground for holding that such a levy by the state board of equalization is void and a nullity. Under no view can it be held that the taxpayer suffered any injury by reason of the levy by percentages. If the injury be presumed by reason of a deviation from the method prescribed by the statute, a computation will show that such presumption is not

well founded. The mere fact that the law has not been literally complied with cannot be held to render the proceedings void, when no change is thereby made in the final result of the levy. When the levy is made by the state board, the total sum to be raised by state taxation is fixed and certain. So is the total equalized valuation of all the property of the state subject to taxation fixed and certain. With these two factors certain and fixed, the determination of the rate of taxation is simply a matter of computation. In legal effect, the specific sum to be raised is certain, fixed, and specific, because easily made so. These considerations leave no doubt in our minds that the levy was not void, but valid, and not subject to the attack made upon it. The contrast between the conditions under which a levy is made in July by county commissioners and those existing when the levy is made by the state board is so great as to warrant a different conclusion as to the effect of a levy by percentages in each case. In the matter of the county levy made in July, the valuation of the property on which the tax must be raised is not then known or capable of being made known. To fix a rate by percentages under those conditions is a mere guess as to the sum that will be raised thereby. This question was before the Supreme Court of Michigan in *Hubbard* v. *Winsor,* 15 Mich. 146, and the court said: "Instead of fixing a specific sum to be raised by taxation, the board directed a percentage on the assessed value. The legislature subsequently passed a statute designed to legalize this method of taxation, and it is claimed this statute is void. We do not perceive any illegality in the original proceedings, and do not deem it necessary to inquire into the validity of the law. The designation of a percentage on a definite sum is just as certain as if it were calculated and stated in figures, and leaves nothing to be done to make it known except a simple computation. It would be absurd to hold a tax valid or void according as a sum of this nature is done by one or another officer from the same data. The law presumes that the rules of arithmetic are the same in all offices." This decision was made under a statute providing that the board of supervisors "shall at their annual session in October in each year ascertain and determine the amount of money to be raised by tax for county purposes * * * and also the amount of state tax required to be raised," etc. The decision is an express authority upholding a levy by percentages when the statute commands a levy in fixed sums. In *Peed* v. *Millikan,* 79 Ind. 86, the Supreme Court of Indiana said:

"Taking the entire order into consideration, we incline to the opinion that it may be treated as showing a levy of fifty-two hundredths of one per cent, and that it is not void because in the shape of a per cent instead of a gross sum. Assuming, as counsel for appellant contends, that the levy must be deemed to have been made upon or with reference to the duplicate of the preceding year, it is a percentage upon a definite and known sum or sums, and the total amount is as certain as if the aggregate had been stated in figures. *'Id certum est quod certum reddi potest.'*" Both of the cases cited were equity proceedings to restrain the collection of taxes so levied. These cases accord with our conclusion that it would be too technical and narrow a construction to hold that a mere irregularity, not possibly affecting the result, vitiates a levy and all subsequent proceedings. We therefore hold that the levy was a valid levy, and in so doing do not overrule the previous decisions of this court pertaining to county levies. *Wells County* v. *McHenry* and *Dever* v. *Cornwell, supra.* This renders it unnecessary to consider the constitutionality of section 79, c. 126, p. 286, of the Laws of 1897, as a decision thereon could not affect this case, for the reason that the taxes are held valid and not subject to the objections urged against them.

On the first argument of this case, in September, 1902, Chief Justice Wallin was strongly of the opinion that the state levy was invalid, and wrote a dissenting opinion. The court as now constituted, has, after an exhaustive argument upon this point on rehearing, unanimously reached the conclusion that the objection to the validity of the state tax levy cannot be sustained.

Appellant presents an affidavit, and on it bases a request that, in case of a decision adverse to the plaintiff, the cause be remanded for another trial. The request is that he be allowed to present further testimony to show that no warrant was ever attached to the tax list, and that no notice was published of the time when the right of redemption would expire. We have recently held, in *Nichols* v. *Roberts* (decided at this term), 96 N. W. 298, that matters extraneous to the record on appeal will not be considered in determining what disposition shall be made of cases appealed to this court. There was ample opportunity in the court below to have presented the testi-

mony now sought to be presented. If such an application were ever
to be viewed with favor this one may be denied as without merit.

The judgment is affirmed. All concur.