[File No. 6536.]

PETTERS & COMPANY, a Corporation, Appellant, v. NELSON COUNTY, a Municipal Corporation, Respondent.

(281 N. W. 61.)

472

Opinion filed July 21, 1938.

*Nestos & Herigstad,* for appellant.

*Olaf M. Thorsen,* State's Attorney, for respondent.

*Alvin C. Strutz, Attorney General,* and *C. E. Brace,* Assistant Attorney General, amici curiæ.

CHRISTIANSON, Ch. J. This is an appeal from an order sustaining a general demurrer to plaintiff's complaint. The facts alleged in the complaint are substantially as follows:

That some time prior to 1921 a quarter section of school land (NE $\frac{1}{4}$ section 36, Twp. 150, Rg. 60) in Nelson county was sold on contract, pursuant to the laws in such cases made and provided; that thereafter taxes were levied against said land for the year 1921, ag-

gregating $118.65; that said taxes were not paid and became delinquent and that said tract of land was thereafter offered for sale at the regular delinquent tax sale in December, 1922, and sold to the plaintiff for the amount of delinquent taxes, penalty, interest, and cost of sale; that thereafter a tax sale certificate, in due form, was issued to the plaintiff pursuant to, and as evidence of, said sale; that thereafter, and on or about Janury 30th, 1925, the state land department cancelled the contract issued to the purchaser of said tract of land, and on March 16th, 1925, said state land department notified the county auditor of said Nelson county of such cancellation and instructed the county commissioners of such county to abate all taxes levied against said land, and to make proper refunds on any outstanding tax sale certificates; that thereafter, on or about. May 24th, 1937, the plaintiff made application to the defendant county for the money paid by it at the said tax sale for said tax sale certificate, but that the defendant county refused to refund to the plaintiff the money paid by it for said tax sale certificate. Judgment is demanded for the amount paid by the plaintiff for the tax sale certificate, together with interest thereon at 7% per annum from the date of such certificate.

It is well settled that. the rule of caveat emptor applies to a tax sale in this state; that the purchaser of a tax sale certificate buys at his peril, and that no liability exists on the part of a taxing municipality to refund money paid for a void tax sale certificate, "in the absence of a regulating statute." Budge v. Grand Forks, 1 N. D. 309, 47 N. W. 390, 10 L.R.A. 165; Tyler v. Cass County, 1 N. D. 369, 48 N. W. 232.

The tract of land in question here was granted to the state of North Dakota by the United States of America for the support of the common schools. Enabling Act, § 10. The state Constitution provides that such lands when "contracted to be sold by the state shall be subject to taxation from the date of such contract." N. D. Const. § 158.

The law in force at the time of the tax sale involved in this action provided that lands "contracted to be sold by the state shall be subject to taxation from the date of such contract and the taxes assessed thereon shall be collected and enforced in like manner as against other land;" and that when a contract is not declared null and void by the board of university and school lands "for failure to pay taxes before

the time provided by law for the sale of land for delinquent taxes, any lands upon which taxes are delinquent at the time of such tax sale may be sold for delinquent taxes as other lands are sold, and the purchaser at such tax sale of any such lands so sold shall only acquire, by virtue of such purchase, such rights and interests as belong to the holder and owner of the contract of sale issued by such commissioner under the provisions of this article, and the right to be substituted in the place of such holder and owner of such contract of sale, as the assignee thereof; and upon the production to the proper officer of the tax certificate given upon such tax sale, in case such lands have not been redeemed, such tax purchaser shall have the right to make any payment of principal or interest then in default upon such contract of sale as the assignee thereof. But no tax deed shall be issued upon any tax certificate procured, under the provisions of this section while the legal title of said lands remain in the state of North Dakota." Comp. Laws 1913, § 325. A tax sale creates a contract between the state and the purchaser at such sale, and the terms of the contract are found in the statute governing the sale. Roberts v. First Nat. Bank, 8 N. D. 504, 79 N. W. 1049; Paine v. Dickey County, 8 N. D. 581, 585, 80 N. W. 770; Fisher v. Betts, 12 N. D. 197, 96 N. W. 132. The plaintiff, as purchaser at the tax sale, acquired the rights, and only the rights, which the statute prescribed.

Plaintiff's action is based on chapter 324, Laws 1923, as amended and re-enacted by chapter 264, Laws 1927. Chapter 324, Laws 1923, so far as material, reads as follows:

"Sec. 1. Whenever any land sold under contract by the State of North Dakota has been sold for taxes and a tax certificate has been issued and the said contract for sale has thereafter been cancelled by the State of North Dakota, the holder of said unpaid tax certificate upon due and proper application in the manner now provided by law shall be entitled to an abatement and refund thereof as well as for any subsequent taxes paid on said land by such certificate holder, together with interest thereon at the rate of seven per cent per annum; and if such land has been bid in by the county at tax sale, all taxes against such land shall be abated."

Prior to the enactment of this statute, there was no law in this state authorizing reimbursement to a purchaser of a tax sale certificate on

state land that had been sold under contract, in the event of the cancellation of the contract.

In 1927, the legislature amended and re-enacted chapter 324, Laws 1923. Laws 1927, chap. 264. The changes made in the former statute, by the 1927 enactment, were as follows:

1. There was added to § 1 of the act, the following provision: "Provided, however, that the provisions hereof shall not apply to hail indemnity taxes," and the rate of interest was changed from 7% to 6%.

2. The 1927 act, also, contained the following additional sections:

"2. The provisions of this act shall apply to the holder of any such tax certificate issued both prior and subsequent to the taking effect of this act.

"3. If any portion of this act shall be declared to be unconstitutional, it shall not affect the other part or portion thereof."

The statute was again amended and re-enacted by the 1929 legislative assembly. Laws 1929, chap. 245. Among the changes then made, was the omission of § 2 of the act of 1927 that: "The provisions of this act shall apply to the holder of any such tax certificate issued both prior and subsequent to the taking effect of this act." The 1923, 1927, and 1929 enactments were all passed as emergency measures.

The plaintiff contends that chapter 324, Laws 1923, was intended to apply, and did apply, to all tax certificates on school lands that had been sold on contract, both those issued prior and those issued subsequent to the enactment of said chapter 324, and that in any event the legislative enactment of 1927, by its express terms, extended the provisions of this act to all outstanding certificates, and that this provision has not been repealed. The defendant, on the other hand, contends that chapter 324, Laws 1923, was intended to apply only to tax certificates issued subsequent to the time that law became effective, and was not intended to apply to certificates already issued; and that the 1927 enactment, in so far as it purports to apply to certificates formerly issued, is violative of § 185 of the Constitution (Amendments, Article 32) which provides that "neither the state nor any political subdivision thereof shall : . . make donations to or in aid of any in-

dividual, association, or corporation except for reasonable support of the poor."

Defendant's counsel calls attention to the fact that the attorney general, in 1925, rendered an opinion to the effect that chapter 324, Laws 1923, did not apply to certificates of tax sale issued prior to July 1, 1923,—the date upon which said chapter 324 became effective (Report of Attorney General, N. D., July 1, 1924 to July 1, 1926, p. 170); and that in August, 1927, the attorney general rendered an opinion to the effect that "§ 2 of chapter 264 of the Laws of 1927, in so far as it purports to apply to refundments on tax certificates prior to the taking effect of the act is unconstitutional and invalid." (Report of Attorney General, N. D., July 1, 1926, to July 1, 1928, p. 78.) And defendant's counsel argues that the contemporaneous construction thus placed upon these statutes should be considered in determining their meaning and effect.

We are agreed that chapter 324, Laws 1923, was intended to apply, and did apply, only to tax sale certificates issued after that law became effective.

"There is always a presumption that statutes are intended to operate prospectively only, and words ought not to have a retrospective operation unless they are so clear, strong, and imperative that no other meaning can be annexed to them, or unless the intention of the legislature cannot be otherwise satisfied. . . . If all of the language of a statute can be satisfied by giving it prospective action only that construction will be given it." 25 R. C. L. pp. 787, 788, 789.

The language of chapter 324, Laws 1923, can be satisfied by giving it prospective effect. There is nothing to indicate any legislative intention that the statute should apply to tax sale certificates issued before the law became effective.

It cannot be said, however, that chapter 264, Laws 1927, was intended to apply only to tax sale certificates issued subsequent to the time that act became effective. Section 2 of that act specifically provides: "The provisions of this act shall apply to the holder of any such tax certificate issued both prior and subsequent to the taking effect of this act." This language leaves no room for doubt as to the legislative intention. It says clearly that the act shall apply to tax certificates issued prior to the time the act takes effect. The tax sale certificate in

question here was issued prior to the enactment of the law, and the question is presented whether the act, in so far as it is made applicable to such prior tax sale certificates, contravenes § 185 of the Constitution.

We are agreed that the provisions of chapter 264, Laws 1927, providing for a refund to the holder of a tax certificate issued before that law became effective, is violative of § 185 of the Constitution, and hence void and of no effect.

The Constitution provides that "neither the state nor any political subdivision thereof shall . . . make donations to or in aid of any individual, association, or corporation, except for reasonable support of the poor." N. D. Const. § 185, Amendments, Art. 32. When the tax sale was held in December, 1921, there was no provision of law authorizing a refund to a purchaser of a tax sale certificate against a tract of school land that had been sold under contract, in the event such contract were subsequently cancelled. The law then in force clearly stated the rights acquired by the purchaser of a tax sale certificate against such land. The plaintiff made purchase at the 1922 tax sale with full knowledge that under the then laws it would not be entitled to repayment in event the contract for the school land were subsequently cancelled. It knew that as a result of the purchase a contract came into being (Roberts v. First Nat. Bank, 8 N. D. 504, 79 N. W. 1049; Paine v. Dickey County, 8 N. D. 581, 585, 80 N. W. 770; Fisher v. Betts, 12 N. D. 197, 96 N. W. 132), and that by virtue of such contract it was entitled only to what the laws provided it should receive. The plaintiff appeared as a bidder at the public tax sale. It purchased without compulsion, and with knowledge of the terms of the contract that resulted from the purchase. The state, and the various taxing subdivisions thereof, assumed no obligations to the plaintiff by virtue of the sale then made to the plaintiff, except such as the laws of the state then in force prescribed.

If the venture had been profitable, the plaintiff would have received all the profits. The state and the taxing subdivisions could not have altered the terms of the contract, and the legislature could not have impaired the obligations thereof.

At the time chapter 324, Laws 1923, and chapter 264, Laws 1927,

were enacted, there was no obligation, legal, equitable, or moral, resting upon the state or any taxing subdivision thereof, to compensate the plaintiff for any loss it might sustain by virtue of the purchase then made, in event the contract of purchase of the school land were cancelled.

If the plaintiff were afforded a refund, it would mean that moneys realized from taxes would be disbursed in payment to it of a sum of money which the contract made at the time of the tax sale contemplated should not be made. If such payment were made, it would constitute a donation, a pure and simple gratuity, unsupported by any consideration, legal, equitable, or moral. While the object the legislature had in view doubtless was a worthy one, the people, in their Constitution, have said in the plainest and most emphatic language, that the legislature may not appropriate or authorize the expenditure by the state or any political subdivision thereof of any public funds as "a donation to, or in aid of, any individual, association, or corporation, except in reasonable support of the poor." It seems clear that to take moneys out of the public treasury and make payment to the holder of a tax sale certificate who has neither a legal, equitable, or moral claim to such payment, would constitute a donation to such holder. It would be giving him moneys from the public treasury to which he had neither a legal, an equitable, or a moral right. This, the Constitution emphatically says, shall not be done. Rowlands v. State Loan Bd. 24 Ariz. 116, 207 P. 359. Chapman v. New York, 168 N. Y. 80, 61 N. E. 108, 56 L.R.A. 846, 85 Am. St. Rep. 661.

It follows from what has been said, that plaintiff has no cause of action against the defendant county. The complaint fails to state a cause of action. The order sustaining the demurrer is correct. It must be, and is, affirmed.

MORRIS, SATHRE, NUESSLE and BURR, JJ., concur.