WILLIAM BUDGE, Appellant, *v.* THE CITY OF GRAND FORKS, Respondent.

1. **Taxation — Action by Purchaser of Void Certificate to Recover Against City.**

    Plaintiff's assignor purchased certain real estate at tax-sale thereof for non-payment of an assessment for street improvement made by the authorities of the defendant city. The city had jurisdiction to make the assessment and sell the assessed property for non-payment, but, by reason of irregularities in the proceedings leading up to the sale, the tax-sale certificates issued by the city treasurer to the purchaser were subsequently decreed to be invalid. *Held*, that the tax-sale purchaser bought under the rule of *caveat emptor*, and, in the absence of a statute authorizing it, had no right of action against the city for the purchase money paid for such invalid tax-sale certificates, and the rule is none the less applicable because the sale was made for the exclusive benefit of the city defendant.

2. **Same; Same; Effect of Recitals in Certificate.**

    *Held, further*, that the recital in such certificate that the purchaser would be entitled to a deed at a specified time was of no force as a covenant for a deed, and added nothing to the force of the statutory provision to same effect.

3. **Same — Reassessment.**

    *Held*, also, that a subsequent statute, authorizing municipalities to reassess for street improvements where a former assessment was for any cause invalid, as to all property upon which such former assess-

ment had not been paid, was intended for the benefit of the taxing municipalities only, and that where such municipality had received the amount of the former assessment by the sale of the assessed property, the right of such municipality to assess such property for such improvement was extinguished, and could not be reasserted, and no power of reassessment as to such property was given by such statute.

(Opinion Filed, November 29, 1890.)

*APPEAL* from district court, Grand Forks county; Hon. CHARLES F. TEMPLETON, Judge.

Cyrus Wellington and J. H. Bosard, for appellant: Many cases hold that purchaser at tax sale has no remedy if his tax title fail, but those cases, with one exception, relate to tax sales for general taxes, not to sales based, like this, on local assessments. In those cases the county or town whose officer made the sale was but an agent of the state, was not acting in its own behalf, as the city was in the case at bar: Chapman v. City, 40 N. Y. 372; People v. Chapin, 5 N. E. 64; Saulters v. Victory, 35 Vt. 350; Norton v. Supervisors, 13 Wis. 611; Phillips v. City, 31 N. J. L. 143; Waples on attachment, 543; 1 Parsons on Contracts, 462; McGoren v. Avery, 37 Mich. 120; 2 Greenleaf on Evidence, § 121; Paul v. Kenosha, 22 Wis. 266; 2 Dillon on Mun. Cor., § 938; Chapman v. Co., 107 U. S. 348; Marsh v. Co., 10 Wall. 676; Louisiana v. Wood, 102 U. S. 204; Martin v. McCormick, 9 N. Y. 331; Barton v. Supervisors, 33 Wis. 445; Clark v. Co., 9 Neb. 516; Piemental v. San Francisco, 21 Cal. 351.

The doctrine of *caveat emptor* does not apply in such a case, where there is a total failure of consideration and the city receives the purchase money solely for its own use.

The city, under authority of statute, gave appellant's assignor certificates in which it was stated that he would be entitled to a deed unless the lots were redeemed prior to a certain date; the law implies from an agreement to give a deed a covenant, that the deed to be given shall pass good title; Turner v. Ogden, 1 Black, 450; Brevoort v. Brooklyn, 89 N. Y. 128: Phillips v. City, *supra.* Doctrine of *caveat emptor* is not applied to judicial sales, void, because the proceedings were a nullity, but only where the judgment debtor had no title to the property sold:

Boggs v. Hargrave, 16 Cal., 560; Freeman on Executions, § 301; Dawley v. Brown, 65 Barb. 107, Commissioners v. Smith, 10 Watts, 392. Where the judgment is void the purchaser can be relieved from his purchase: Verdin v. Slocum, 71 N. Y. 345, and other cases; Rorer on Judicial Sales, § 48. Innocent purchaser may recover back money paid on void sale, so long as person sued retains the money: Brandon v. Brown, 106 Ill. 519; (This is such a case.) Maxim *"Ignorantia legis non excusat,"* does not apply; it is enough to hold that no one shall exempt himself from a duty, or escape a penalty by the plea of ignorance, or acquire an advantage by pretending ignorance: 2 Pothier on Ob. 297; Culbreath v. Culbreath, 50 Am. Dec. 375.

An agent who assumes to sell, warrants his power to do so; the city assumed to sell as agent of the owner.

The act of 1889 (providing for re-assessment) renders the city liable. Where a moral obligation exists (as here, to refund) the legislature may impose a legal obligation; Brewster v. Syracuse, 19 N. Y. 116; Jefferson etc., Co. v. Clark, 95 U. S. 644, and other cases.

After an assessment has been set aside, one who has voluntarily paid the assessment may recover from the city: Jersey City v. Ricker, 38 N. J. L. 225; Valentine v. City, 34 Minn. 446—and the Indiana cases hold that the purchaser of certificate stands in same position as voluntary payor.

Exemption of defendant from liability here, is contrary to public policy; Corbin v. County, 1 McCrary, 521.

Arthur J. O'Keefe, for respondent: Money voluntarily paid for taxes with knowledge of the facts, cannot be recovered: Mayor v. Lefferman, 45 Am. Dec. 145; Allentown v. Saeger, 20 Pa. St. 421; Stickney v. Bangor, 30 Me. 404; Sanford v. New York, 33 Barb. 147; Powell v. Supervisors, 46 Wis. 210; Comrs. v. Goddard, 22 Kan. 389, and other cases. *Caveat emptor* applies here: State v. Casteel, 11 N. E. Rep. 219. If a purchaser at tax sale fails to get title he is without remedy: Cooley on Tax. 572; Lynde v. Melrose, 10 Allen, 49; Packard v. New Limerick, 34 Me. 266; Worley v. Cicero, 11 N. E. 227. Such purchaser buys at his peril and is bound to inquire into

the regularity of the proceedings: Stead v. Course, 4 Cranch 403; Earley v. Doe, 16 How. 618; French v. Edwards, 13 Wall. 506; Blackwell on Tax Titles, p. 67; McCormack v. Edwards, 6 S. W. 32; Martin v. Barbour, 34 Fed. 711; Cooley on Tax. p. 572; Desty on Tax. p. 850; Sullivan v. Davis, 29 Kan. 28; Phelps v. Mayor, 112 N. Y. 216; Christy v. St. Louis, 61 Am. Dec. 598; Churchman v. Indianapolis, 11 N. E. Rep. 301; Rorer on Jud. Sales, §§ 150, 174, 476; Black on Tax Titles, § 269; Loomis v. Los Angeles, 59 Cal. 456; Bales v. York Co., 18 N. W. Rep. 81; Merriam v. Otoe Co., 19 N. W. Rep. 479; Younglove v. Hackman, 1 N. E. Rep. 233. Where tax is fair and assessment made against persons bound by law to pay it, but invalid by reason of irregularity, purchaser is held to know of irregularity and cannot recover: 2 Dillon, Mun. Cor. p. 938. Law of 1889 does not affect this case. Void assessment cannot be cured by legislature: People v. Seymour, 76 Am. Dec. 529; 99 id. 205; Mellinger v. Houston, 3 S. W. 249; Bartlett v. Wilson, 8 Atl. 321, and other cases.

BARTHOLOMEW, J. This action was orginally commenced by Jacob S. Eshelman. Pending the action Eshelman died, and his administrator assigned the claim on which the suit was brought to the plaintiff, William Budge, who was substituted as plaintiff by order of the court, and filed an amended complaint alleging, in substance, that the defendant is a municipal corporation. That in 1883 the defendant caused Kitson avenue, in said city to be filled in and graded. That the mayor and council of said city, by ordinance duly passed, attempted to levy a special tax to pay for said filling and grading upon the property abutting upon said avenue. That subsequently thereto, the said special tax not having been paid, and about March 13, 1884, the said mayor and council, under an ordinance duly passed, caused the real estate upon which said special tax was levied to be sold to pay the same, and that upon such sale all of said property was purchased by one Jacob S. Eshelman; and the defendant city, through its treasurer, and in pursuance of an ordinance duly passed, caused eighteen certificates of sale to be issued to said Eshelman, in each of which it was stated that the property therein described had been sold for a delinquent special tax,

as provided by law, specifying the purposes of the tax and the person to whom and the amount for which the sale was made, and stating that if not redeemed the purchaser would be entitled to a deed on and after a certain time, upon the surrender of the certificate. That Eshelman paid the city of Grand Forks and said city received for said certificates the sum of $1,810.85, and that by virtue of an ordinance duly passed the city appropriated said sum to its own use, and paid the same out for municipal purposes. That said special tax, and the sale thereunder, and the certificates issued to Eshelman, and all of said ordinances, except the last, were void for the following reasons: The mayor and council did not, before filling and grading said avenue, or at any time, or in any manner, declare such work or improvement necessary to be done, nor did they cause to be published a resolution that said work was necessary to be done for four successive weeks in an official newspaper in said city, nor in any other manner. That, in a proper action in the district court for Grand Forks county, brought by the property owners against the city of Grand Forks and Jacob S. Eshelman, and on December 3, 1886, it was by the said court duly adjudged and decreed that said special tax and said tax certificates were void, and said Eshelman was ordered to deliver up said tax certificates for cancellation, and the city was perpetually enjoined from issuing any deeds upon said certificates. Then follows the allegations that the claim was duly presented and disallowed, and subsequently assigned to plaintiff, with prayer for judgment for $1,810.85 and interest since March 12, 1884. To this complaint defendant filed a demurrer, on the ground that the facts stated did not constitute a cause of action. The demurrer was sustained, and judgment entered dismissing the complaint, and plaintiff appeals.

It is alleged in the complaint that the tax certificates issued by the city to appellant's assignor were absolutely void for certain specified reasons. The supreme court of Dakota territory held those reasons sufficient. See McLauren v. City of Grand Forks, 43 N. W. Rep. 710. The charter of the city of Grand Forks authorized the city to fill and grade its streets, and assess the expense thereof upon abutting property, and to sell such

property at tax sale to satisfy such assessment, unless the same was paid as the charter prescribed; but before the city could proceed to grade and fill any particular street, the city council was required, by resolution, to declare such improvement necessary, and to cause such resolution to be published in an official paper for four consecutive weeks. This duty the city council entirely neglected to perform, and for that cause the territorial supreme court declared that the purchaser took nothing by the tax sale. Whatever right to recover the purchase money he may have had is here sought to be enforced by his assignor. It is not claimed that there is any express statute authorizing a recovery. Appellant's position is that a purchaser at a tax-sale of a void tax-sale certificate may, on common-law principles, in an action for money had and received, recover the consideration paid from the municipality for whose use and benefit the tax was levied and which received the benefit of the consideration. Preliminary to any investigation of this position, we notice that the defects which rendered the tax-sale invalid were all defects in procedure. *Prima facie,* the property was subject to taxation for the improvement of the street upon which the property abutted, and the city authorities had jurisdiction to assess and collect such tax; but because they failed to follow their authority their action was invalid. But an investigation of the records pertaining to the attempted taxation would have revealed all the infirmities. It is true that municipal corporations can claim no exemption from the universal obligation resting upon all contracting parties to do justice, and no statute is required to compell them to refund money which they have received to their own use through any fraud or misrepresentation on their part, or through any mistake of fact, or which of right they ought not to retain. Louisiana v. Wood, 102 U. S. 294; Chapman v. County of Douglas, 107 U. S. 348, 2 Sup. Ct. Rep. 62; Clark v. Commissioners, 9 Neb. 516, 4 N. W. Rep. 246; Pimental v. City of San Francisco, 21 Cal. 351; Paul v. Kenosha, 22 Wis. 256.

Considerations of this character led the supreme court of Wisconsin, at an early date, to hold squarely that money paid at tax-sale for void tax certificates could be recovered back in an action for money had and received. Norton v. Supervisors,

13 Wis. 684. There was in Wisconsin at that time an express statute authorizing a recovery; but the court goes further, and pronounces the statute simply declaratory of the common law, and denies the application of the rule of *caveat emptor* to a case of that kind. This case was against a county. The certificate had been issued on a general tax-sale, and was void by reason of irregularities in the tax proceedings. The court makes a distinction, holding, in effect, that as to the title of the party against whom the tax was assessed the tax-title purchaser buys at his peril, but as to the sufficiency of the proceedings to pass that title he takes no chances. No authority is cited in support of the opinion, but it has been repeatedly recognized and followed in Wisconsin. See Van Cott v. Supervisors, 18 Wis. 247; Warner v. Supervisors, 19 Wis. 611; Hutchinson v. Supervisors, 26 Wis. 402; Barden v. Supervisors, 33 Wis. 445. In Chapman v. City of Brooklyn, 40 N. Y. 372, the common-law right of recovery in a case quite similar to the case at bar was also asserted. In that case the city had assessed certain property for street improvement. Under the law the property had to be assessed in the name of the owner, and upon non-payment such proceedings were to be had as should ultimately terminate in a judgment in a court of record against such party, and on such judgment an execution was to be issued against the personal property of the defendant. If such execution was returned, unsatisfied, then, and then only, could the property against which the assessment was made be sold. In this case the assessment was made and all the proceedings had and judgment rendered against a party who had no interest in the land whatever.

It will be noticed that, under the distinction in Norton v. Supervisors, *supra*, the case of Chapman v. City of Brooklyn presents the exact conditions for the application of the rule of *caveat emptor*. The court, however, did not apply the rule, but adverted to the broad equity principle already stated, and said that under those principles it had been repeatedly held that taxes illegally imposed and collected might be recovered back. Now, if judicial decisions can determine anything, it is well settled that illegal taxes voluntarily paid can never be recovered

back. See Desty, Tax'n, 788, 791, and cases cited; Cooley, Tax'n, 805, and cases cited; Bank v. Americus, 68 Ga. 119; Raisler v. Athens, 66 Ala. 194; Welton v. Merrick Co., (Neb.) 20 N. W. Rep. 111; Railroad Co. v. Dinwiddie, 8 Sawy. 312, 13 Fed. Rep. 789; Peebles v. Pittsburgh, 101 Pa. St. 304. None of the cases cited by the New York court hold differently. The doctrine had already been expressly recognized in New York, (Swift v. City of Poughkeepsie, 37 N. Y. 511,) and has since been reaffirmed, (Phelps v. Mayor, etc., 112 N. Y. 216, 19 N. E. Rep. 408.) Neither would it necessarily follow, because an illegal tax that had been paid could be recovered back, that the purchaser of an invalid tax certificate could recover his purchase money. There is a very pronounced distinction between the rights of the party upon whom the tax was assessed, and who has paid the same, and the claim of the tax-title purchaser. Lynde v. Melrose, 10 Allen, 49. In that case the right of a tax-sale purchaser, whose title had been declared void by the judgment of a court, to recover his purchase money, was denied in the broadest terms. The court says: "No precedent for maintaining such a suit is found, and plaintiff's counsel rests his argument solely upon the ground that the defendant has received the amount of the tax without consideration. * * * * * But there is a plain distinction between the right of a person to recover from the town the amount of the tax unlawfully assessed against him and the claim of a purchaser under a collector's deed, whose title proves defective. The town is not a party to the deed. The purchaser is a mere volunteer in the payment of the tax. He has the same means of knowing whether it is legally assessed that the town has. He buys a title without warranty, except such covenants as he takes from the collector, and he must rest solely upon them. Beyond these covenants his deed is a mere quitclaim, for which he has paid what he thought the chance worth. His speculation may prove profitable or wholly unprofitable, but no one has taken his property without his consent, or with any contract, express or implied, to reimburse him if his bargain prove a losing one." This case was decided before Chapman v. City of Brooklyn and while it would seem

exactly in point, yet it is not mentioned in the latter case. But in the subsequent case of Brevoort v. City of Brooklyn, 89 N. Y. 128, Lynde v. Melrose was cited with approval, (see page 135,) but the case was distinguished by reason of certain specific agreements of the collector to repay in case of failure of title. In this case it is said: "It is true, as claimed by defendant, that the invalidity of the assessments appears upon the face of the assessment rolls, and undoubtedly, if the plaintiff had paid his money, as a simple purchaser at tax-sale, without any agreement for repayment in case any irregularity should exist or be discovered, he could not have recovered back the money thus paid. In such a case he would buy without warranty, and take such a title as the tax sale would give him." That the New York court never intended to announce any general common-law right on the part of tax-sale purchasers to recover the purchase money paid for invalid certificates is apparent from the language in People v. Chapin, (N. Y.) 5 N. E. Rep. 64, where, in speaking of a statute conferring such right of recovery, the court says: "By it the state voluntarily assumes a liability to refund money received on a sale where the tax proceedings have not been in accordance with the statute, and are invalid; thus subjecting itself to a just rule of responsibility applied, without a statute, to inferior municipalities." Citing Chapman v. City of Brooklyn. The case of Phillips v. City of Hudson, 31 N. J. Law, 143, is pressed upon our attention as fully sustaining appellant's position. In that case the assessment was for street improvement, and was held void by reason of certain irregularities in the tax proceedings, and the purchaser at the tax-sale was allowed to recover the purchase price paid; two justices concurring, and the chief justice dissenting on the main point. But that case, as an authority for appellant's contention, is very much weakened by the subsequent case of Casselbury v. Piscataway Tp. 43 N. J. Law, 353, where it is said: "It is not denied that the township had the power to tax and to sell for taxes, that the taxes were actually levied and were unpaid, that a sale was actually made, and that there was no fraud or imposition, and no warranty. It is merely alleged that there was illegality in the method of procedure. The rule of law ap-

plicable to such a case is that the municipality is under no obligation to refund the purchase money because the tax-title fails. The purchaser is a volunteer and buys at his own risk." Citing Lynde v. Melrose, *supra*, and Cooley, Tax'n, 572. The court adds; "The case of Phillips v. City of Hudson, 31 N. J. Law, 143, is not to be regarded as opposed to this rule. * * * * * These judges reached the conclusion that the assessment was void, that the declaration of sale was a nullity, and that the case stood as if no conveyance had been executed. The matter was thus placed upon a footing of an unexecuted agreement to convey in pursuance of a sale made to enforce payment of a tax not legally due to the city. Viewed in this aspect, the case is, by essential differences, distinguished from the case in hand." The cases heretofore cited from Wisconsin, and the cases in 40 N. Y. and 31 N. J. Law, are the only cases to which our attention has been called (and we find no others) where it has been held that the purchaser of invalid tax sale certificates could recover his purchase money in an action for money had and received, and in the absence of a statute. Both New York and New Jersey have subsequently recognized and affirmed the general doctrine denying a recovery in such cases, as stated in Lynde v. Melrose, *supra*. In Otoe Co. v. Gray, 10 Neb. 565, 7. N. W. Rep. 325, the action was against the county, and a recovery was refused on the ground that it did not appear that the county received to its own use all the money paid. That point was deemed sufficient for the decision of the case, and the general right of recovery is neither denied nor affirmed. The case would not seem to be an authority either way.

On the other hand, the cases that have denied a recovery are very numerous. Cooley on Taxation, 475, thus states the law: "A tax-sale is the culmination of proceedings which are matters of record, and it is a reasonable presumption of law that, where one acquires rights which depend upon matters of record, he first makes search of the record in order to ascertain whether anything shown thereby would diminish the value of such rights, or tend in any contingency to defeat them. A tax purchaser, consequently, cannot be in any technical sense a *bona*

*fide* purchaser as that term is understood in the law, because a *bona fide* purchaser is one who buys an apparent good title without notice of anything calculated to impair or affect it; but the tax-payer is always deemed to have such notice when the record shows defects. He cannot shut his eyes to what has been recorded for the benfit of all concerned, and, relying implicitly on the action of the officers, assume that what they have done is legal because they have done it. * * * The law never assumes the existence of jurisdictional facts, and throughout the tax proceedings the general rule is that the taking of an important step is a judrisdictional prerequisite to the next, and it cannot therefore be assumed because one is shown to have been taken that the officer performed his duty in taking that which should have preceded it. The tax purchaser buys, therefore, under the rule of *caveat emptor,* and, under common-law rules, would get nothing unless he got the land itself." In Desty on Taxation, 850, the same principles are stated at length, and with equal emphasis, and the author says: "Except as limited and qualified by express statutory provisions, the rule (*caveat emptor*) applies to all purchasers at tax sales, and if the public has nothing to sell the purchaser gets nothing. Purchasers are bound to know at their peril that the supposed delinquent is in fact delinquent; that he has been lawfully assessed, and has failed to make payment. * * * The purchaser at a municipal sale for taxes, buys at his own risk, and at his peril investigates the proceedings. A county does not guaranty tax-titles, except as the statute may provide, and cannot refund money upon the failure of such titles."

The principles laid down by these text-writers are fully sustained by the following authorities: Lynde v. Melrose, *supra*; Casselbury v. Piscataway Tp., *supra*; Phillips v. Jefferson Co., 5 Kan. 412; Commissioners v. Walker, 8 Kan. 431; Sapp v. Commissioners, 20 Kan. 243; County of Lyon v. Goddard, 22 Kan. 389; Sullivan v. Davis, 29 Kan. 28; Rice v. Auditor General, 30 Mich. 12; Hamilton v. Valiant, 30 Md. 139; Jenks v. Wright, 61 Pa. St. 410; Packard v. New Limerick, 34 Me. 266; Wilmerton v. Phillips, 103 Ill. 78; Loomis v. County of Los Angeles, 59 Cal. 456; City of Logansport v. Humphrey, 84 Ind.

467; Board v. Armstrong, 91 Ind. 528; State v. Casteel, (Ind.) 11 N. E. Rep. 219; Worley v. Town of Cicero, id. 227; Railroad Co. v. Alexander, (Ark.) 4 S. W. Rep. 753; McCormick v. Edwards, (Tex.) 6 S. W. Rep. 32; Barber v. Evans, 27 Minn. 92, 6 N. W. Rep. 445; Flint v. County Commissioners, 27 Fed. Rep. 850. In Merriam v. Otoe Co., 15 Neb. 408, 19 N. W. Rep. 479, it is said: "Parties dealing with a county or other municipality are under obligations to act with fairness and in good faith, as such corporation can only act through its records and other instrumentalities given it by law. Such persons are bound to take notice of such records, not only of what they show, but also, if such be the case, of their failure to show matters material to the case in hand. It was then the duty of plaintiff, before buying the lands in question at private tax-sale, to examine the record and see for what taxes they were being sold. If he neglected this duty, or knowingly co-operated with the county treasurer in a sale and purchase of the land for a tax unauthorized by law, he cannot call upon the county to save him harmless from the effects of such imprudence.    *    *    *    *    *    If the purchaser, the most active and interested participant in the purchase and sale, choose to neglect these duties, the county, which is scarcely present at all, cannot be held to insure him from the loss which always does, and probably is generally intended to, follow an investment made with such apparent imprudence." It is true that some of the cases above cited were actions brought by the fee owner to recover illegal taxes which he had paid; but, as we have seen, it has been declared that the claims of such a party to recover were superior to those of the tax purchaser. Certainly we can see no reason, nor has any been suggested, why they should be less. But as there exists some conflict in the authorities, and as this is the first case of its kind that has arisen in this state, we are urged to adopt what learned counsel insists is the more just and equitable rule, and allow a recovery in every case where a tax-sale purchase proves to be illegal and void. But we are by no means convinced that such a rule has any superior claim to justice. In our opinion it has not. In reaching this conclusion, we extend no immunities to municipal corporations.    We simply apply the same principles that would

obtain between individuals. Each step leading up to the sale of real estate for non-payment of taxes is prescribed by law. These steps the purchaser is bound at his peril to know. The law presumes that he knows them, and will not heed his declaration to the contrary. *Ignorantia legis non excusat* is one of the most familiar and most universal maxims of the law. Again, each step in the tax proceedings is jurisdictional in its nature, and unless legally performed, the succeeding officer is without authority to act. Jurisdiction is never presumed, but must appear from the records of the tax proceedings. These records the law requires to be kept for the very purpose of showing the regularity of the proceedings. They are open to the inspection of the purchaser. He is chargeable with full knowledge of their contents. Whatever may affect the legality or value of his prospective purchase is known to him before he makes his bid. The municipality does not ask him to purchase. He is a volunteer in its broadest sense. He buys without warranty or covenant of any kind, and bids what he considers the chance worth. Under these circumstances, and in a case like the present, where there was no fraud, no misrepresentation, and no mistake of facts, it is well settled as between individuals that the purchaser is without remedy in case of failure of title. Rawle, Cov. § 321, and cases cited. And he ought to be without remedy. In this case appellant's assignor knew when he made the purchase that in case of redemption he would receive an increase on his investment usually unknown to legitimate business. Upon failure to redeem, he hoped to obtain title to valuable property for a small fraction of its real worth. Appellant says that his assignor should be given all these chances for unusual gains, but at the same time should be fully indemnified against any risk of loss. In no other line of business, under no other circumstances, would such a claim be made. In the interests of the public revenue, and as an inducement to bid at tax sales, our law presents a tempting offer to the speculator. In the same interest many of the states have gone further, and have enacted laws providing for the recovery by the tax-title purchaser of his purchase money upon failure of the tax-title. But the very fact that such statutes have been so generally passed is in itself a

strong argument against the existence of the right of recovery in the absence of a statute authorizing it.

In this connection we must notice another point. The tax-sale certificates issued to appelant's assignor recite that the purchaser will be entitled to a deed on and after a specified date, in case no redemption is made. Counsel insist that such recital is equivalent to a covenant for a deed, which cannot now be given because the city has been perpetually enjoined from issuing deeds on such certificates. But we do not think the recital constitutes a covenant in any proper sense. It is simply a recital of a provision of the law, and its presence in the certificate adds nothing to the force of the law, or to the liability of the municipality. Even if held to be a covenant we could not give it effect. The tax collector's powers are such only as are given by statute. He cannot bind the municipality which he represents to any liability not authorized by law, and he is without authority to make such covenant. It is true that a collector's promise to refund in case the tax-sale proved illegal was enforced in Brevoort v. City of Brooklyn, *supra*, but in Hyde v. Supervisors, 43 Wis. 129, the court held a similar agreement made by the board of supervisors at the time of the tax-sale, and the further agreement, to secure to such purchaser a perfect title to the lands described in the tax-sale certificates to be in excess of any authority conferred upon the board and not binding upon the county. Certainly this is the better doctrine.

A distinction is sought to be made between cases where the defendant municipality receives the proceeds of the tax-sale solely to its own use and benefit, and where it receives such proceeds in part as the collecting agent for other municipalities, and it is said that while a recovery might not be just in the latter cases, it should certainly be enforced in the former, and we are cited to the New York cases as making such distinction. No such distinction is affirmatively announced in those decisions. We doubt if any such were in the mind of the New York court. But if such distinction is made, it arrises from the fact that the court refuse to apply the rule of *caveat emptor* in Chapman v. City of Brooklyn, and, as we hold that such rule applies in this case, we cannot adopt such distinction.

In Churchman v. City of Indianapolis, (Ind.) 11 N. E. Rep. 301, the action was brought to recover purchase price of property bought at tax-sale for non-payment of assessment for street improvement, which assessment and sale were illegal and void, and the court says: "It is now deffinitely settled that money voluntarily paid on a demand in the nature of a tax, as an assessment in the nature of a street improvement really is, cannot be recovered back, except in pursuance of some statutory provision authorizing such a recovery, and we know of no statute permitting, much less requiring, money voluntarily paid upon either an erroneous or irregular or even wrongful assessment for the improvement of a street to be refunded. [Citing authorities.] From this, it very naturally follows that the doctrine of *caveat emptor* applies as fully to sales upon assessments for street improvements as to any analogous class of cases." This case is direct authority for the application of the rule in an action which cannot be distinguished in principle from the case at bar. Let it be once granted—and it is not disputed in this case—that an assessment for street improvement is a tax, and the whole line of authorities at once applies to a case of that kind.

But one more point is made in the case. In 1889 the legislature of Dakota passed an act entitled "An act providing for the reassessment of abutting property for the improvement of public streets." See chapter 31, Laws 1889. The statute provides that when any city "has heretofore, upon a petition of a majority of the abutting property owners upon any street, made a special assessment for grading or paving the same and assessed the abutting property uniformly, and in the same amount per front foot, and proceeded to pave or grade the street in accordance with the petition, and it shall appear that the ordinance or other proceedings in making the assessment were for any reason invalid, the city council is hereby authorized and empowered to reassess all the real property abutting upon such improvement upon which the special assessment for the same has not been paid, upon the front-foot plan, in such sum as may be sufficient to pay its just proportion of the cost of such improvement;" and the following sections point out the method of reassessing and collecting such tax. It is claimed that this statute, in effect, au-

thorizes a recovery in this case; that, as the assessment has been declared invalid, the city has a right to reassess the property and collect this tax again; and that it would be grossly unjust to allow the city to collect a second tax, and at the same time hold the proceeds of the first; and that we cannot presume that the legislature intended to work such injustice. We will not stop to discuss whether or not a statute passed in 1889 could have any effect upon the rights or liabilities of the parties to a tax-sale made in 1884, or whether or not a party in any particular case can receive any benefit from any statute passed after the action was commenced. We are of opinion, and so hold, that the statute in question was passed exclusively for the benefit of municipalities, and to enable them to obtain their revenues, and not, directly or indirectly, for the benefit of tax-sale purchasers; and that when a municipality has once received the amount of a special assessment upon any particular piece of property, even though that special assessment was invalid, that such tax is paid, and no right of reassessment exists under the statute. If independently of this or any other statute a legal obligation rested upon the municipality to refund the amounts paid for illegal tax certificates, then it could not, perhaps, be said that the tax was paid and the right to reassess might exist; but just so long as the rule of *caveat emptor* applies to all purchasers at tax-sales, it must logically follow that where a municipality receives the money for a tax-sale certificate, the tax, for non-payment of which the sale was made, is paid. The claim of the municipality is satisfied, and can never again be reasserted. It is clear that appellant can claim nothing from that statute. The fact that the principles involved in this case are quite important, and are here raised for the first time in this state, together with the zeal and ability with which the points were pressed upon us by counsel, have caused us, perhaps unduly, to lengthen this opinion. The decision of the lower court was clearly in accord with the weight of authority, was strictly just, and must be affirmed. All concur.

CORLISS, C. J., having been of counsel, did not sit on the hearing of this case; Judge WINCHESTER, of the sixth judicial district, sitting by request.