S. J. OGREN, Appellant, v. CRYSTAL SPRINGS SCHOOL DISTRICT NUMBER 29 OF KIDDER COUNTY, STATE OF NORTH DAKOTA, a Public Corporation, Respondent.

(203 N. W. 324.)

**Municipal corporations — action for money had and received may be maintained against municipality.**

1. An action for money had and received may be maintained whenever one person has received or has in his possession money of another which he is not in equity and good conscience entitled to retain, and this rule applies as well to municipal corporations, where not contrary to express statute or the policy of the law, as to private corporations or to individuals.

**Schools and school districts — action against school district will not be maintained for money unlawfully borrowed by treasurer to replace defalcations.**

2. An action for money had and received may not be maintained against a school district to recover money unlawfully borrowed by the treasurer of such district to replace defalcations of the district's fund.

**Appeal and error — granting new trial, not disturbed on appeal unless abuse of discretion is shown.**

3. The granting or denial of a new trial on the ground of the insufficiency of the evidence is within the sound judicial discretion of the trial court, and his decision will not be disturbed except where an abuse of such discretion is clearly shown.

---

Note—(1) Maintenance of action against municipality for money had and received, see 2 R. C. L. 792; 1 R. C. L. Supp. 629.

(2) Review of discretion as to new trial, see 2 R. C. L. 217; 1 R. C. L. Supp. 453.

*Appeal and error — record shows no abuse of discretion in trial court grant-*
*ing new trial.*

4. The record in the instant case examined, and *held* that there was no abuse of discretion on the part of the trial court in granting a new trial on the ground of the insufficiency of the evidence to sustain the verdict returned.

Opinion filed March 30, 1925.

Appeal and Error, 4 C. J. § 2816 p. 833 n. 57. Money Received, 27 Cyc. p. 849 n. 2, 4. Municipal Corporations, 28 Cyc. p. 667 n. 84; p. 670 n. 93. Schools and School Districts, 35 Cyc. p. 964 n. 5.

Appeal from the District Court of Kidder County, *Jansonius, J.* Affirmed.

*Divet, Holt, Frame, & Thorp,* for appellant.

The fact that bonds are invalid does not necessarily preclude the granting of relief to bond holders. On the other hand, the following rules may be said to be fairly well settled. (1) If the bonds are issued for money borrowed the fact that the bonds are ultra vires will not preclude the recovery of the sum loaned in an action for money had and received where the municipality had the power to borrow the money. 5 McQuillin, Mun. Corp. pp. 4930, 4931, § 2349, and cases cited.

In this case at bar the instrument was a warrant, but the principle is the same. The debt still exists.

If bonds are invalid because of irregularities in issuing them, the municipality is bound in equity to return the consideration received therefor. 5 McQuillin, Mun. Corp. p. 4931, note 97 and cases cited.

When, however, a municipal corporation issues bonds to raise money for a purpose for which it might lawfully incur indebtedness, but the bonds are held to be void because of some defect in the execution, or because the municipality had no power to issue the negotiable bonds, the purchaser of the bonds is entitled to recover of the municipality the money paid for them in an action for money had and received, or to require it to account for all benefits received as the result of the issuance of the bonds. 19 R. C. L. p. 1032, § 322.

When void bonds were given to secure a lawful indebtedness, even if the bonds cannot be sued on the indebtedness may be. 19 R. C. L. 1033 and cases cited.

Municipal repudiation of honest indebtedness which the municipality intended to contract and could have lawfully contracted, is no more to be tolerated than individual repudiation of honest indebtedness, merely because it was not incurred in pursuance of a duly executed express contract, unless the municipal charter or the statutes prohibit the municipality from incurring any liability by implication. Long v. Lemoyne (Pa.) 21 L.R.A.(N.S.) 474, 477.

No injustice will result from a rigid enforcement of the requirement of the statute in this regard. While the bonds are void, the holder of them can fall back on the original transaction and recover. If he has loaned money to the municipal corporation which it had authority to borrow he can recover it in a proper manner. Want of power in such a case merely affects the form of security to evidence the loan. The written obligation is void. Whatever liability exists independent of such obligation remains undisturbed. Bank v. School Dist. 3 N. D. 496.

The power to act as agents of the town in borrowing the money and applying it as directed as conferred and what followed became a question, not of the existence of the power, but of the manner of its execution.

It seems to me that a refusal to recognize and enforce the substantial transaction for lack of an express promise when one may and should be implied, and is shown to be in full accord with the purpose and intention of both parties, and accomplishes complete and accurate justice, would be a perversion of our plain duty. Hoag v. Greenwich, 133 N. Y. 152.

If the city obtain other property which does not belong to her, it is her duty to restore it, or if used by her to render an equivalent to the true owner. Nelson v. Mayor, 63 N. Y. 544.

Where a city has received money for bonds illegally issued it may be compelled to pay such money back when the purpose of the loan was lawful and the creation of the debt was not prohibited by law. 28 Cyc. 1636, § 22.

The purchaser of municipal bonds is not required to look to the application of the proceeds, and hence it is no defense that the proceeds of the bonds were improperly applied or used for an unauthorized purpose. Thus it is no defense that the proceeds of the bonds have been used to discharge an ultra vires contract of the municipality. 5 McQuillin, Mun. Corp. § 2356, p. 4937.

Where money or property of an innocent person has gone into the coffers of the nation, by means of a fraud to which the agent was a party, such money or property cannot be held by the United States against the claim of a wronged or injured party. United States v. State Nat. Bank, 96 U. S. 30, 24 L. ed. 647.

It is universally held that money paid under a void contract may be recovered. Clark, Contr. p. 645; Pullman Palace Car Co. v. Central Transp. Co. 171 U. S. 138, 43 L. ed. 108; Northwestern etc. Co. v. Shaw, 37 Wis. 655, 19 Am. Rep. 781; Marsh v. Board, 10 Wall. 676, 19 L. ed. 1040; City v. Wood, 102 U. S. 294; United States v. Bank, 96 U. S. 330, 24 L. ed. 647.

*Zuger & Tillotson,* for respondent.

As a rule a person cannot be made a debtor for money borrowed by another for him without authority, and appropriated to his use without his knowledge or consent; and consequently an action for money had and received will not lie against him. This rule has been held applicable to a corporation whose treasurer, in the mistaken belief he had authority, borrowed money on account of the corporation, although the money was used in paying its debts, where the treasurer was a defaulter, having embezzled money which otherwise would have paid such debts, and may reasonably be presumed to have borrowed the money to cover up his default and escape detection. 2 R. C. L. 781, § 35; Kraft v. South Boston Rd. Co. 150 Mass. 207, 5 L.R.A. 641, 22 N. E. 920.

NUESSLE, J. This is an action for money had and received. The defendant Crystal Springs School District Number 29 of Kidder county, North Dakota is a public corporation. In 1920 George D. Richards was the treasurer of the district. He was also the cashier of the First State Bank of Crystal Springs. The district proposed to build some new school houses. To that end and in order to take up certain outstanding warrants, a bond issue in the amount of twenty-six thousand dollars was voted. These bonds were sold to the State of North Dakota, but the money was not immediately available. A contract was entered into with one Canning for the building of the school houses, and construction was begun. Preliminary thereto, however, and in order to properly finance the undertaking, a written contract was entered into between the defendant district, the Dakota Savings Bank of Fargo, Canning, and the

first State Bank of Crystal Springs. Under the terms of this agreement Canning was to go forward with the work and as the same progressed was to be given certificates indicating the amount that he was entitled to on his contract on account of the work then done. The Dakota Savings Bank was to advance twelve thousand dollars and the Crystal Springs bank ten thousand dollars to make payments on account of these certificates. The money payable from the State on account of the purchase of the bonds was assigned to the Savings Bank and when received by it was to be paid as follows: four thousand dollars to take up certain outstanding warrants of the district then held by the Savings Bank: twelve thousand dollars to reimburse the Savings Bank for moneys to be advanced by it in payment on certificates to the contractor; ten thousand dollars to reimburse the Crystal Springs bank on account of moneys to be advanced by it for like purpose. The buildings were built. The State did not pay the money for the bonds until 1922. Building operations were financed by the Savings Bank and the Crystal Springs bank in accordance with the agreement. In June, 1920 Richards interviewed the plaintiff Ogren at the latter's home in South Dakota. Richards represented that he was the treasurer of the defendant district; that he was authorized to borrow money to finance the building operations and arrange to procure five thousand dollars from the plaintiff to be repaid in December or January following. Ogren was to receive interest on his loan at the rate of eight per cent, and the indebtedness was to be evidenced by the defendant's warrant. Since the law permitted warrants to draw interest at the rate of seven per cent only, a warrant was to be issued for $5030.00, this on the assumption that the money would be paid in January following. Richards returned to Crystal Springs. He at once induced the clerk of the defendant to issue a warrant complying wth the terms of the arrangement made with Ogren and procured the president of the school board also to sign such warrant. Thereupon Richards took the warrant, endorsed it as presented and not paid for want of funds, and sent it forward to Ogren's bank in South Dakota. The latter thereupon sent forward to Richards a draft for five thousand dollars. He deposited this draft to the credit of his personal account in the Crystal Springs bank. At about the same time or a little later he procured nine thousand dollars from a St. Paul bank by a similar de-

vice. This money also was deposited to the credit of his personal account in the Crystal Springs bank.

It appears that Richards in thus proceeding was acting wholly without authority. No proceedings were ever had by the school board authorizing the borrowing of money by Richards on warrants or otherwise, and no action was ever taken by the board authorizing issuance of the warrants above referred to. It also appears that in the year 1920 Richards received various sums of tax moneys belonging to the district from the county authorities. The business of the school district was conducted in a most negligent and incompetent manner. The board apparently implicitly trusted Richards and exercised no supervision over his conduct of the office of treasurer. Under the law then in effect, chapter 147, Sess. Laws 1919, all school district funds were required to be deposited with the Bank of North Dakota. Any person charged with the custody of such funds who failed to comply with this requirement was declared guilty of a misdemeanor and subject to punishment on account thereof. Whether or not Richards maintained an account in the Bank of North Dakota at that time or ever is not disclosed. The board of directors and clerk of the defendant district deny having knowledge of the fact that the district funds were kept in the personal account of Richards in the Crystal Springs bank; but it appears that checks were issued on that account from time to time for district purposes by Richards. The members of the board and the clerk were paid by warrant for their services. They cashed these warrants at the bank. Richards testifies that all of the funds realized by him from the negotiation of warrants with the plaintiff and the St. Paul bank were used in payment of school district obligations. The record, however, is conclusive to the contrary. Richards concededly paid himself four hundred dollars for his alleged services in connection with the transaction with Ogren, and concededly the district board had no knowledge of such payment. Various of the other items that Richards testified he paid by check on this account were in fact not paid, the checks not being honored for want of funds.

It appears that while these transactions were in progress the Crystal Springs bank was having financial difficulties. In December, 1920 or January, 1921 Richards ceased to act as district treasurer. Thereafter the bank was closed by the banking authorities. Richards himself was

convicted of felony on account of transactions in connection with the bank, and was sentenced to confinement in the penitentiary. In January, 1921 Ogren inquired as to the payment of his warrant. Payment was refused and this action was brought.

The action may be and was considered as an action for money had and received. In his complaint the plaintiff, generally setting out his version of the facts, alleges that he advanced to the defendant the sum of five thousand thirty dollars; that he received therefor a warrant for that amount; that the same was not paid for want of funds and was duly registered; that the defendant received the money thus paid by the plaintiff and used the same in the building of its school houses; that payment has been demanded but refused. The defendant, answering, denies generally the allegations set out in the complaint; denies that the plaintiff ever furnished to the defendant any money for the erection of a school house or otherwise; denies the issuance of the warrant as alleged in the complaint, and alleges that the same is false and fraudulent, and that no consideration was ever received therefor. On the issues as thus made, the cause was tried to a jury which returned a verdict in favor of the plaintiff for $5,000.00. Thereafter, the proper foundation having been laid therefor, the defendant moved in the alternative for judgment notwithstanding the verdict or for a new trial. The trial court, after consideration, denied the motion for judgment notwithstanding the verdict but granted the motion for a new trial. From the order granting such motion the plaintiff now appeals to this court.

The principal question here presented is as to the sufficiency of the evidence to sustain the verdict as returned. The trial court in his instructions, when submitting the cause to the jury, advised them that the vital question was as to whether or not the school district had in fact received any of the moneys paid by Ogren to Richards. There was no question as to what took place between Richards and Ogren or with reference to the issuance of the warrant, and the jury were instructed that their verdict must be for the defendant unless they should find from the evidence that the money thus paid by Ogren was in fact received by the defendant district. No exceptions were taken by either party to the instructions as given. The plaintiff contends that it affirmatively appears from the record that the defendant district had the

power to borrow the money; that it received and used the money; that the purpose was a proper one and the obligation incurred was within the debt limit. While the plaintiff concedes that the warrant issued to Ogren is void and that Richards had no authority to enter into any such transaction, he insists that since the district had the power to borrow the money and since it in fact received and used the money for a proper purpose or now has it in the district treasury, that it must answer to the plaintiff for the money thus had and received. On the other hand, the defendant denies that it ever received the money, and insists that the warrant is void, that Richards had no authority to enter into any such transaction, and that, therefore, it is in no way responsible on account of any payments made by the plaintiff to Richards.

We think that the fundamental proposition of law contended for by the plaintiff is sound. The action for money had and received is bottomed on equitable principles. Such action may be maintained whenever one person has received or has in his possession money of another which he is not in equity and good conscience entitled to retain. See Raasch v. Goulet, 49 N. D. 936, 194 N. W. 380; Krump v. First State Bank, 8 N. D. 75, 76 N. W. 995; Logan v. Freerks, 14 N. D. 127, 103 N. W. 426; 27 C. J. 849. And this rule applies as well to municipal corporations where not contrary to express statute or the policy of the law (See Goose River Bank v. Willow Lake School Twp. 1 N. D. 26, 26 Am. St. Rep. 605, 44 N. W. 1002; Budge v. Grand Forks, 1 N. D. 309, 10 L.R.A. 165, 47 N. W. 390; Bosard v. Grand Forks, 13 N. D. 587, 102 N. W. 164) as to private corporations or to individuals. So if in fact the district had the power to borrow the money and received and used it for a proper purpose as contended, having been thus benefited and enriched at the expense of the plaintiff, in equity and good conscience the plaintiff should be reimbursed and an action for money had and received will lie. See Backhaus v. Lee, 49 N. D. 821, 194 N. W. 887; Budge v. Grand Forks, 1 N. D. 309, 10 L.R.A. 165, 47 N. W. 390; People's Bank v. School Dist. 3 N. D. 496, 28 L.R.A. 642, 57 N. W. 787; Bosard v. Grand Forks, supra; Henderson v. Redman, 185 Ky. 146, 214 S. W. 809, 7 A.L.R. 346 and note; New Haven v. Weston, 87 Vt. 7, 46 L.R.A.(N.S.) 921, 86 Atl. 996; First Nat. Bank v. Goodhue, 120 Minn. 362, 139 N. W. 599, 43 L.R.A.(N.S.) 84; Argenti v. San Francisco, 16 Cal. 256; 16 R. C. L. 1032; 28 Cyc.

667 et seq; 6 McQuillin, Mun. Corp. § 2349. The charge of the trial court to the jury when the case was submitted to them was grounded upon this proposition, and the defendant then did not, and does not on this appeal challenge its correctness. But the defendant insists that the burden was upon the plaintiff to establish by a preponderance of the evidence that the defendant did in fact receive the money, and that the plaintiff has failed to sustain the burden.

Conceding the power of the defendant district to borrow the money, the difficulty with the plaintiff's position is that he assumes that the money paid by him to Richards went into the treasury of the defendant. He argues that Richards deposited the money in his own personal account in the Crystal Springs bank, and that it appears that he paid proper obligations of the defendant by checks drawn on that account. Further, that the jury were justified in finding that the district board had knowledge of the manner in which Richards kept the district funds in the same account and made no objection thereto, and that, therefore, moneys paid to Richards, regardless of their source and by him so deposited must be considered as being in the treasury of the district. It is unquestionably true that the school board were grossly negligent in their supervision of the district. It may also be true that the circumstances were such that they should have had notice and knowledge of the fact as to the manner in which Richards kept his account, though the several members of the board deny such knowledge. But the board had no power to say where the district moneys should be kept. The law required that they be deposited in the Bank of North Dakota. The account in the Crystal Springs bank did not purport to be the account of Richards as treasurer, but the personal account of Richards. From the record it is impossible to determine whether he had any other account anywhere. Since the account was his personal account we cannot but assume that it was so used by him, and that he drew thereon for his personal use. We can conceive of no theory under which the account can be held to be the account of the defendant, or a deposit therein to be in the treasury of the district.

Now it appears that the school houses to be built by the defendant were to cost $26,000.00. That amount of money was in fact procured by sale of bonds to the State. It also appears that Richards procured $5,000.00 from the plaintiff by means of the void warrant and at least

$9,000.00 from other sources by the same device; he also received the regular revenues of the district. All, excepting the proceeds of the bonds, went into his personal account in the Crystal Springs bank of which he was the cashier and in charge. His bank was in difficulties. He himself was guilty of gross irregularities in connection therewith. The record conclusively establishes that at most only a small proportion of the moneys thus received by him went to pay obligations of the district. If he used the money of the district for his own purposes and sought to and did replace his defalcations by means of funds unlawfully borrowed from Ogren and others, the district would not be liable therefor. See First Nat. Bank v. New Castle, 224 Pa. 285, 132 Am. St. Rep. 779, 73 Atl. 331; Brown v. Newburyport, 209 Mass. 259, 95 N. E. 504, Ann. Cas. 1912B, 495; Craft v. South Boston R. Co. 150 Mass. 207, 5 L.R.A. 641, 22 N. E. 920; 2 R. C. L. 781.

The trial court granted the motion for a new trial. In his memorandum setting forth his reasons for the order, he says:

"While I agree with plaintiff's theory that if the school district actually got his money and now has it or used it for lawful purposes, it should be paid to plaintiff, but the amount should be limited to such an amount as the school district actually got. As to the four hundred dollars Richards says he kept, and as to the twenty-five hundred dollars that was protested, certainly the district should not be required to pay. I feel that an audit of the books should disclose how much, if any, of this money went to the school district, and that the issues would be more clearly defined on a retrial. I am satisfied that a judgment for five thousand dollars will not stand. The conclusion of Richards that he used all of this money for the benefit of the district clearly is not true. At least twenty-nine hundred dollars is not accounted for. The whole transaction is illegal, and plaintiff is in court only because he appears to have parted with five thousand dollars which went somewhere. He cannot recover more than he can prove the school district got. In my opinion there was insufficient evidence to justify a verdict for five thousand dollars, and I will, therefore, make an order setting aside the judgment and granting a new trial."

We think that the record is such as to amply justify the trial court in his conclusions as above expressed with reference to the insufficiency of the evidence to sustain the verdict. Certainly on the record we

would not be warranted in saying that there was an abuse of sound judicial discretion in granting the motion for a new trial. The granting or denial of a new trial on the ground of the insufficiency of the evidence is within the sound judicial discretion of the trial court, and his decision will not be disturbed except where an abuse of such discretion is clearly shown. See Skaar v. Eppeland, 35 N. D. 116, 159 N. W. 707; Shuman v. Lesmeister, 34 N. D. 209, 158 N. W. 271; Blackorby v. Ginther, 34 N. D. 248, 158 N. W. 354; Aylmer v. Adams, 30 N. D. 514, 153 N. W. 419.

The order appealed from must be and is affirmed.

CHRISTIANSON, Ch. J., and BIRDZELL, BURKE, and JOHNSON, JJ., concur.