PARROTT, Respondent, v. ABERNATHY, County Treasurer, et al, Appellant.

(237 N. W. 900.)

(File No. 6936.  Opinion filed September 21, 1931.)

*H. C. Lawton,* State's Attorney, of Gann Valley, for Appellants.

*Miller & Shandorf,* of Mitchell, for Respondent.

MISER, C.  In this action respondent Parrott seeks to recover from Buffalo county and its treasurer a balance remaining of the sum paid for assignments of certain tax sale certificates.  In Menaugh et al. v. Elvira School District et al., 50 S. D. 311, 210 N. W. 51, this court held the lands described in the certificates to be no part of Elvira school district.  Thereafter the owners of the land paid to the county treasurer the amount of the taxes thereon less the Elvira school district tax.  The county treasurer called in respondent's certificates, paid him $373.22—the amount received from the land owners—and retained the certificates.  Respondent had paid to the treasurer $1,201.29 for the assignments of these certificates.  The difference between the amount paid by respondent to the county for the certificates, plus interest, and the amount paid by appellant county to respondent when it called in the certificates, was $981.07.  For this amount respondent had judgment in circuit court.

Appellants contend that the decision in Gunderson v. Young, 48 S. D. 448, 205 N. W. 28, entitles them to a reversal of the judgment.  In that case this court held that where the effect of a former decree was to cancel a tax levy in a consolidated school district, it became the duty of the county treasurer to accept taxes due from property owners therein, less the amount claimed to be due for school taxes.  But in the case at bar there was a purported redemption by the landowners after a tax sale in which the land had been bid in for the county and after assignment by the county of its tax sale certificates, a complicating situation not presented in the Gunderson Case.

Here we have the following facts as viewed in their statutory relationship:  At the sale of these lands for taxes in December, 1925, the county treasurer bid in the lands for the county.  Section 6794, Rev. Code 1919.  Certificates were issued to Buffalo county.  Section 6795, Rev. Code 1919.  In May, 1926, respondent Parrott, being "desirous of purchasing the interest of the county," paid to the treasurer "the amount of the taxes, penalty, interest and cost of

sale and transfer," to wit, $1,201.29, and the county treasurer there-upon did "assign and deliver to such purchaser the certificate of purchase held by the county," all as provided in section 6796, Rev. Code 1919. By this assignment, according to the section last cited the county treasurer did "convey unto such purchaser all the rights of the county, both legal and equitable, in and to such real property as much so as if he had been the original purchaser at the tax sale." Appellants contend that respondent does not come within the terms of section 6793 so as to entitle him to a refund of the amount paid upon the sale and that, under the rule of caveat emptor stated in American Inv. Co. v. Beadle County, 5 S. D. 410, 59 N. W. 212, 213, and Minnesota Loan & Inv. Co. v. Beadle County, 18 S. D. 431, 101 N. W. 29, respondent cannot recover even though he has paid to Buffalo county $981.07 more than Buffalo county has repaid to him.

In American Inv. Co. v. Beadle County, supra, this court said: "It seems to be a general rule, at common law, laid down by the text writers and applied by the courts, that one who buys land at a tax sale is never a bona fide purchaser, and that if his title fail, for any reason, he has no remedy against the municipality for whose benefit the land was sold, independent of a statutory provision affording him relief. * * * The rule of caveat emptor applies with all its force to a purchaser at such sale, who pays his money voluntarily, with the expectation of procuring the property at a grossly inadequate price, or of securing an exorbitant profit upon the investment in case the property is redeemed. * * * It is not claimed that the property purchased at tax sale, upon which respondent and his assignors paid taxes, was sold through the mistake or wrongful act of the treasurer, or that plaintiff's title failed by reason of any act or omission on the part of the defendant county; and it would violate a rule of sound public policy to hold, in the absence of a statutory provision, that one who voluntarily pays taxes upon the land of another, or purchases such land at tax sale, can recover from the county, in case his title fail from any cause, after the money so received has been distributed to the several funds, and applied to the use and benefit of the public."

That case was decided in 1894. It involved the sale of land wherein the entry had been canceled by the United States government after the land had been listed and assessed and, by

mistake, sold for such taxes, a situation for which a refund is now provided by section 6793, Rev. Code 1919. Indeed, the most casual comparison of present tax statutes with the statutes then in force shows that the reduction in interest rate from 30 per cent to 12 per cent is only one of many changes in our tax laws. Section 6793 in its present form is the result of four amendments since the American Inv. Co. decision, each amendment increasing the causes for which refunds are authorized. It is apparent that in South Dakota, as in many other states, there has been increasing recognition of the fact that purchasers at tax sales serve a useful and necessary purpose in governmental economy. Apparently, as the profits of tax purchasers have been limited by statute, it has been deemed advisable to increase the security of those who pay the taxes of delinquent landowners. Even so, it is still generally true that, in the absence of a statutory provision, one who purchases at tax sale cannot recover from the county when the sale proves invalid.

█  Respondent contends that the language of section 6793 entitles him to a refund. If any language therein authorizes the refund, it is the following: "When real property has been sold * * * which at the time of its assessment was not taxable or upon which no tax was due at the time of sale, the county shall refund to the purchaser * * * the amount paid upon the sale and any subsequent taxes paid to protect the tax sale certificate, with interest at the rate of 7 per cent per annum from the date of each payment." The lands in question were not taxable by Elvira school district and no lawful tax for Elvira school district was due at the time of sale. The lands, however, were taxable for county and state purposes and county and state taxes were due at the time of sale. If it were not a matter of statutory interpretation, but merely a matter of justice, there is aboundant reason why respondent Parrott should have a refund of the sums paid by him. So while respondent urges, none too confidently, that section 6793 furnishes sufficient authority for the refund, he evidently relies to have the judgment sustained upon the gross injustice of any other course. He quotes section 55, Rev. Code 1919, as follows: "For every wrong there is a remedy." This section is inspiring to every lover of justice, but as a citation of authority it leaves much to be desired. There is, however, such inequity in

Buffalo county receiving from respondent $1,201.29 and in repaying to him only $373.22 thereof, under all the circumstances of this case, that no inconsiderable independent research has been employed by the court in the decision of this case.

Reference to Menagh et al. v. Elvira School District, 50 S. D. 311, 210 N. W. 51, discloses that the lands in question were never part of Elvira school district. The attempted annexation was a mere nullity. When Menagh and his coplaintiffs, owners of the land in suit, commenced that action against the school district, the county commissioners, the auditor, the treasurer, and superintendent of schools of Buffalo county does not appear from the record. However, on January 8, 1925, the order of the trial court sustaining the demurrer to their complaint was signed by the trial judge. In that complaint an injunction had been asked restraining the school district and its officers and the foregoing county officers from levying and collecting school taxes. On February 27, 1925, Menagh and his coplaintiffs appealed to this court from the order sustaining the demurrer. While that appeal was pending the county treasurer of Buffalo county, defendant in that suit, offered these lands for sale for the delinquent taxes. He bid in these lands for Buffalo county. Therefore, it was with full knowledge that the owners were claiming that Buffalo county had no right whatever to impose school taxes upon their lands, that the county treasurer of Buffalo county, one of the defendants in the suit, bid in this property for Buffalo county. In May, 1926, while the appeal in the Menagh Case was pending in this court, Buffalo county, through its treasurer, assigned these questioned certificates to respondent Parrott, a nonresident, whom the trial court found to be "an innocent purchaser of said tax certificates, without notice of any errors or illegality in the assessments or levy of the taxes covered by the same." He paid therefor $1,201.29. Presumably not until that assignment was any of the amount transferred to Elvira school district funds. In September, 1926, this court handed down its opinion in the Menagh Case. On November 30, 1926, Menagh and his coplaintiffs, owners of the land, paid the amount of their taxes less the Elvira school district tax to the county treasurer. Instead of requiring the landowners to tender "the sum mentioned in the certificate," as prescribed by section 6799, Rev. Code 1919, the treasurer accepted a tender of a less sum, called in

the certificates, and paid to the tax certificate purchaser a sum $981.07 less than "the sum mentioned in the certificates." Section 6813, Rev. Code 1919, providing for the abatement of invalid assessments and refund of invalid taxes by the board of county commissioners, provides that: "No tax shall be abated on any real property which has been sold for taxes, while a tax certificate is outstanding." Here without the formality of any petition for abatement or refund, and while these tax certificates are outstanding, the county treasurer apparently abates the landowners' taxes and Buffalo county retains $981.07 of respondent's money. Has the assignee of these certificates any relief?

In Louisiana v. Wood, 102 U. S. 294, 298, 26 L. Ed. 153, the Supreme Court of the United States says: "In Moses v. MacFerlan, 2 Burr. 1005, it is stated as a rule of the common law, that an action 'lies for money paid by mistake, or upon a consideration which happens to fail, or for money got through imposition.' * * * As we took occasion to say in Marsh v. Fulton County, (10 Wall. (77 U. S.) 676, 19 L. Ed. 1040), 'the obligation to do justice rests upon all persons, natural or artificial, and if a county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation.'"

In Moses v. MacFerlan, 2 Burr. 1005, 97 Reprint 676, Lord Mansfield said: "This kind of equitable action, to recover back money, which ought not in justice to be kept, * * * lies only for money which, (in justice and fairness), the defendant ought to refund: It does not lie for money paid by the plaintiff, which is claimed of him as payable in point of honor and honesty, although it could not have been recovered from him by any course of law; * * * but it lies for money paid by mistake; or upon a consideration which happens to fail; or for money got through imposition, (express or implied;) or extortion; or oppression; or an undue advantage taken of the plaintiff's situation, contrary to laws made for the protection of persons under those circumstances. In one word, the gist of this kind of action is, that the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to refund the money."

Louisiana v. Wood, supra, was followed in Ward v. Board of County Com'rs of Love County, 253 U. S. 17, 40 S. Ct. 419, 64

L. Ed. 751. In that case, however, Love county had collected by coercive means taxes against non-taxable Indian lands. It was also followed in the very recent decision, District of Columbia v. Thompson, 281 U. S. 25, 50 S. Ct. 172, 174, 74 L. Ed. 677, wherein it was held that no statute is required to impose upon a city a legal obligation to make restitution where a city has abandoned the project for which the special assessments were paid, citing Valentine v. St. Paul, 34 Minn. 446, 448, 26 N. W. 457, and quoting therefrom as follows: "So that the city stands in the position of holding in its treasury money collected from the plaintiff which it has no right in equity, good conscience, or common honesty to retain, because the purpose for which it was collected has been completely abandoned."

But the Supreme Court of North Dakota, in Budge v. City of Grand Forks, 1 N. D. 309, 47 N. W. 390, 392, 10 L. R. A. 165, considered these or somewhat similar contentions, yet it said: "If judicial decisions can determine anything, it is well settled that illegal taxes voluntarily paid can never be recovered back." Therein, after review of many decisions and texts, many of which were later reviewed by this court with like result in American Inv. Co. v. Beadle County, supra, the North Dakota court proceeds: "But as there exists some conflict in the authorities, and as this is the first case of its kind that has arisen in this state, we are urged to adopt what learned counsel insists is the more just and equitable rule, and allow a recovery in every case where a tax-sale purchase proves to be illegal and void. But we are by no means convinced that such a rule has any superior claim to justice." After stating reasons for reaching this conclusion, not all of which, however, are applicable to the case at bar, the North Dakota court says: "In the interests of the public revenue, and as an inducement to bid at tax-sales, our law presents a tempting offer to the speculator. In the same interest many of the states have gone further, and have enacted laws providing for the recovery by the tax-title purchaser of his purchase money upon failure of the tax-title. But the very fact that such statutes have been so generally passed is in itself a strong argument against the existence of the right of recovery in the absence of a statute authorizing it."

The strongest reason that could be urged against the application of the rule of caveat emptor in the case at bar, and the strongest

reason that presents itself against having the case at bar ruled by the decisions and texts cited in Budge v. City of Grand Forks, supra, and American Inv. Co. v. Beadle County, supra, is the fact that in the case at bar the invalidity in the tax sale was not caused by a defect which the purchaser could have found had he examined the proceedings leading up to the sale. The reason which underlies the denial to a tax certificate purchaser of the right of recovery is stated in Budge v. City of Grand Forks, supra, thus: "Each step leading up to the sale of real estate for non-payment of taxes is prescribed by law. These steps the purchaser is bound at his peril to know. The law presumes that he knows them, and will not heed his declaration to the contrary."

When, therefore, the rule of caveat emptor is applied in the case at bar, it is applied for reasons different, at least to some extent, from the reasons considered sufficient in the Budge Case and in many cases cited therein. Yet we are of the opinion that respondent, tax certificate purchaser, may not recover from Buffalo county for the following reasons: First, a most painstaking search of all available authorities has resulted in finding no case where recovery against the county has been permitted under like circumstances. See note 31 L. R. A. (N. S.) 1141. Second, we have a statute which lists the circumstances under which a refund shall be made to a tax purchaser. However, without straining its language, section 6793 does not provide for such refund. As stated in the Budge Case, the fact that this statute has been passed is in itself a strong argument against the existence of the right of recovery in the absence of such a statute. See note 31 L. R. A. (N. S.) 1143; Stutsman County v. Wallace, 142 U. S. 293, 12 S. Ct. 227, 35 L. Ed. 1018. Third, we are not free to solve this problem as one of first instance. We are not at liberty to apply, in the case at bar, the principles stated in Louisiana v. Wood, supra; Ward v. Board of County Com'rs of Love County, supra; and District of Columbia v. Thompson, supra. In Miner v. Clifton Township, 30 S. D. 127, 133, 137 N. W. 585, 586, this court quoted with approval from Gould v. Board of Com'rs of Hennepin County, 76 Minn. 381, 79 N. W. 303, 530, as follows: "It should be kept in mind that the rules which apply to actions to recover back money paid by one person to another do not apply, to their full extent, to actions to recover back from a county, town, or other municipality money in

payment of taxes illegally or irregularly assessed or levied. There are certain considerations of public policy which must necessarily be taken into consideration. If a party could recover back from the public whenever there was some illegal or irregular action on the part of public officers in the assessment or levy of the tax, merely because he was ignorant of such illegality or irregularity at the time he paid the tax, the public finances would be thrown into chaos, and frequently municipalities would be reduced to utter bankruptcy."

Were the money which was paid by respondent Parrott into the treasury of Buffalo county still in that treasury, the county might, perhaps, not complain were it now ordered to restore that money. It, perhaps, may be assumed, however, that the money so received was distributed, as the law contemplates. Presumably the tax levied, however illegal, for Elvira school district, was not retained by the county but was distributed to Elvira school district. We are cited to no statutory authority which would permit the county to recover from the school district. Section 6793 contains the provision that the taxes refunded as therein provided shall be apportioned to the respective taxing districts for which they were levied, but we have already held that no refund is permissible herein under section 6793.

While, therefore, no reason appears why the county treasurer, through whose neglect of duty the damage to respondent Parrott was caused, should not be liable, we are of the opinion that as to appellant Buffalo county the judgment must be, and it is, reversed.

POLLEY, P. J., and CAMPBELL, WARREN, and RUDOLPH, JJ., concur.

MISER, C., sitting in lieu of ROBERTS, J., disqualified.